(No. 29684.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIE B. SHACK, Plaintiff in Error.

*Opinion filed January 22, 1947—Rehearing denied March 17, 1947.*

DAVID JAMES MADDOX, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, RICHARD B. AUSTIN, and JOSEPH A. POPE, all of Chicago, of counsel,) for the People.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

Plaintiff in error, Willie B. Shack, hereafter called defendant, has sued out a writ of error to the criminal court of Cook county to reverse a conviction of murder in a trial by jury, in which his punishment was fixed at forty years in the penitentiary.

Defendant assigns many errors, but argues only the following: (1) that the evidence is so conflicting that, together with the introduction of incompetent evidence, it renders the verdict contrary to law; (2) that the State's Attorney in his arguments to the jury made prejudicial remarks calculated to prejudice the jury; (3) that evidence connecting the defendant with a third party as constituting a motive was improperly allowed, and that referring to it by the State's Attorney constituted error; and (4) no evidence was introduced that constituted a ground from which the State's Attorney could argue that the motive of defendant was jealousy.

The homicide occurred on August 19, 1945, early in the morning, although most of the acts out of which the

controversy arose occurred during the previous evening. Defendant had an uncle living at 3347 Giles Avenue, and Charles (Zack) Gibbs had a place at 3350-52 Giles Avenue, both in the city of Chicago. On the evening of August 18, 1945, some of the persons hereafter mentioned were at the house of the uncle of defendant, and from there went to the place operated by Gibbs, which he referred to as a "hut." The persons present were defendant, Gibbs, Verdell Fisher (the deceased,) Slim, (last name not disclosed,) Clarence Cook, Terry (a white woman,) and others. The inference is clear that all of the parties except Terry were colored, although it is not so stated in the record. After eating they purchased and drank a considerable quantity of whisky, and then started a crap game. The game broke up over a quarrel between Gibbs and Chester Shack, a brother of the defendant, which ended in a fight outside of the premises. During the course of the fight Chester called for help, and the defendant went out, and after the use of considerable force upon Gibbs and others the fight was ended, and Gibbs left saying he was "going to his mama's and get a gun," and the other men left for purposes not disclosed.

After that, in the course of the evening, Gibbs, Slim, Terry and the defendant went to the uncle's house, and there more whisky was served, and while defendant was out of the room Gibbs, Terry and Slim left, and later Gibbs returned to his home, as he says, about three o'clock in the morning. About 12:30 A.M. the witness Miller and the deceased were sitting on the steps at 3350-52 Giles Avenue when defendant came out of an alley through the backyard of the Gibbs premises, and came up to him and to Fisher, and asked where Zack (Gibbs) and the girl were, and before anything was said Shack commenced hitting the deceased on the chest. Deceased ran across the street towards his house, and during the course of the next day he died. This witness did not see the knife, but saw blood spots

the next day, where Fisher had been, and the proof shows Fisher died of a knife wound. The evidence is confused as to whether it was immediately before or after the assault upon Fisher that defendant asked his cousin where Terry had gone, and upon saying she did not know the defendant knocked her off of the railing with his fist, and also knocked down Chester Shack, his brother, for interfering. There is evidence that at this time the defendant had a knife in his hand, and that when he left the scene of the affray with another man the latter said "you hit the wrong man anyhow."

Another eyewitness, who resided directly across the street, heard a commotion out-of-doors and looked out of the window and saw Fisher and another fellow sitting on the stairs at 3350 Giles Avenue, and heard the sound of a fight and heard Verdell Fisher scream, and saw him run across the street with somebody following him, and then witnessed the assault upon the cousin, and the brother of defendant.

The version given by the defendant is entirely different. He claims he was not interested in the Terry woman, and that when he came back towards the Gibbs place he saw the two men together, and as he walked down they got on each side of him, and one of them drew a knife, and in struggling with the person who had the knife, stabbed him and took the knife away from him, and that that man was Fisher. He then left the scene and was arrested later on, and denied he had been in the neighborhood. He also denied any more than a passing acquaintance with Terry, although it is rather clearly shown he had his name on the mailbox at the place where she lived, and clothes were found in this apartment, in which were found some letters and his ration card, indicting that at least he had been there. There is a suggestion there is doubt of defendant's guilt because no eyewitness saw him actually stab the deceased, but this is not of consequence, inasmuch as he

admits he did do the stabbing, but under different circumstances than related by the witnesses for the State.

It appears without any question that Fisher, an innocent bystander, was stabbed to death with a knife, and that defendant was in the immediate neighborhood and ran away, and admitted to the police that he had cut a man, but did not know he had died. Other details appear in the evidence, but are not material to the questions raised in this case.

The first point urged is that the evidence was so conflicting that, together with incompetent evidence or misconduct, it requires a reversal of the jury's verdict. The rule is well settled that the verdict of a jury will not be disturbed where the evidence is merely conflicting. (*People* v. *Thompson,* 321 Ill. 594; *People* v. *Price,* 371 Ill. 137; *People* v. *Tamborski,* 356 Ill. 11.) But the verdict will be more closely scrutinized if incompetent evidence is allowed, (*People* v. *Rogers,* 348 Ill. 322;) or there is misconduct upon the part of the prosecuting attorney, (*People* v. *McLaughlin,* 337 Ill. 259;) or where it rests on the testimony of the accomplice alone, (*People* v. *Gordon,* 344 Ill. 422;) or there is a lack of identification, (*People* v. *Etzel,* 348 Ill. 223;) or other like circumstances. In such cases the evidence is more closely examined to ascertain whether the other errors have had an effect upon the weighing of evidence.

The brief for plaintiff in error contends the evidence referring to Terry was not only improper, but referring to it in the argument constituted error. The evidence shows that defendant came to the house of his cousin and that Terry was with him; the evidence shows that she was at the drinking place of Gibbs and was also at the uncle's house, and likewise left with Slim and Gibbs, while at the uncle's house. There is evidence from which it might be inferred that defendant at least visited the room of Terry, as well as received mail there. And there is also evidence

of one of the witnesses that at the time defendant and his brother left the scene of the homicide one commented to the other "you hit the wrong man anyhow." Admittedly, there was no quarrel with the deceased. This is not the case of proving a third person had, at a different time, been assaulted by the defendant, as in *People* v. *Kowalski,* 332 Ill. 167. The woman Terry came with the defendant, went with the defendant to his uncle's home, and then disappeared, after which he commenced to search the neighborhood and commit assaults upon persons who could give him no information, and ended up by killing Verdell Fisher. The presence of this woman and his action in connection therewith, as well as what resulted after her absence, were relevant to the question of his motive in what followed.

The other principal error assigned is as to the comments of the State's Attorney, in which he told the jury that Terry leaving with Slim and Gibbs brought on a drunken murderer's rage, causing him to stab the deceased, as well as to beat the other persons who could give him no information. The defendant admits he inflicted the fatal blow. Under the statute, (Ill. Rev. Stat. 1945, chap. 38, par. 373,) when the killing is proved the "burden of proving circumstances of mitigation, or that justify or excuse the homicide will devolve on the accused, unless the proof on the part of the prosecution sufficiently manifests that the crime committed only amounts to manslaughter, or that the accused was justified or excused in committing the homicide." In this case certainly the evidence upon the part of the prosecution does not raise either the inference of manslaughter or justifiable homicide, and the claim of the defendant is substantiated only by his own testimony. If the jury had believed his testimony a verdict of manslaughter or acquittal might have been justified, but they did not believe him.

Malice is also defined by the statute, as follows: "Express malice is that deliberate intention unlawfully to take

away the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." (Ill. Rev. Stat. 1945, chap. 38, par. 358.) The evidence surrounding the killing shows that for some reason, whether it was because of the woman Terry, or because of something occurring during the ·crap game, or the drinking of whisky, the defendant was enraged, and, without ascertaining who it was he was assaulting, killed the deceased. If these facts be true, then the killing was done with malice, as defined by the statute.

We have many times pointed out that it is the province of the jury to pass upon the credibility of witnesses, (*People* v. *Bond,* 281 Ill. 490;) that there must be other circumstances besides a mere conflict of testimony to justify a reversal, (*People* v. *Thompson,* 321 Ill. 594; *People* v. *Tamborski,* 356 Ill. 11;) and that it is the special province of a jury to ascertain the facts in the case. *People* v. *Price,* 371 Ill. 137.

The cases cited by defendant on the question of improper argument have no application to the present state of facts. In *People* v. *McLaughlin,* 337 Ill. 259, the attorney for the People made outrageous remarks, inferences and accusations during the course of the trial, and in the argument in *People* v. *Black,* 317 Ill. 603, and *People* v. *Gordon,* 344 Ill. 422, the action of the attorney for the People amounted, as the court said, to palpable efforts to introduce foreign matters to the prejudice of the defendant in cases where the evidence was very close. And in *People* v. *Rothe,* 358 Ill. 52, the State's Attorney· proved that the defendant refused to make a statement, and referred to the conversations had with him about other offenses not then under consideration, as well as his alleged conversations with witnesses to such other offenses. In-

stances of this kind bear no resemblance to what occurred in this case.

The part of the speech claimed to be prejudicial was the inference that defendant was keeping this woman Terry, and his rage at his belief she had run away with another. If not based on evidence in the case, these remarks would have been ground for complaint, but, where facts proved justify the argument made, we will not reverse because it is not expressed with the nicety of polite conversation. In *People* v. *Surace,* 295 Ill. 604, we held that counsel for both the State and for the defendant must be allowed all proper latitude in their arguments, and no matter how much the court or opposing counsel may differ with the arguing attorney in his conclusions on the evidence, as long as he is arguing the evidence and drawing conclusions therefrom the court cannot legally interfere. This principle applies to the facts under consideration. It is possible jealousy was not the motive for the murder, but there was evidence in the record justifying the argument made by the People's attorney. Where the killing is clearly proved it is not necessary to establish motive to make the crime murder. *People* v. *Mangano,* 375 Ill. 72; *People* v. *Wagner,* 390 Ill. 384.

Under the proof as offered by the People, the defendant was clearly guilty of killing Verdell Fisher under circumstances showing malice, and if the defendant were believed he would have established self-defense. No errors have been shown which require us to take the place of the jury in considering the weight of the evidence. We think the evidence abundantly shows that the defendant was guilty of murder, as charged in the indictment.

The judgment of the criminal court of Cook county is accordingly affirmed.

*Judgment affirmed.*