Ernest Felton, Sr., Plaintiff-Appellant, v. Joseph Coyle, South Chicago Community Hospital, an Illinois Not-For-Profit Corporation, and Capitol Ambulance and Oxygen Service, Inc., an Illinois Corporation, Defendants-Appellees.

Gen. No. 51,632.

First District, Second Division.

May 7, 1968.

McCoy, Ming & Black, of Chicago (Fleetwood M. Mc-Coy, Ellis E. Reid, and Helen I. Cohen, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Perry L. Fuller and D. Kendall Griffith, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Plaintiff, Ernest Felton, Sr., brought an action against the defendant Dr. Joseph Coyle for assault and false imprisonment. After a jury verdict in favor of defendant, plaintiff appeals, contending that the court erred in allowing improper remarks in the opening statement made in behalf of defendant; in failing to direct a verdict in favor of plaintiff on the issue of liability; in re-

fusing a certain tendered plaintiff's instruction and in giving certain defendant's instructions; and finally, in its ruling on the admissibility of certain evidence. The jury also found in favor of the other two defendants, but this court dismissed the appeal as to those parties, and those judgments are not now presented for review.

On April 7, 1959, plaintiff sustained a fracture of the middle third of his right clavicle. He was taken to South Chicago Community Hospital for treatment. The defendant doctor, a staff physician, was assigned to treat plaintiff. He prescribed that plaintiff lie flat on his back and that the arm be immobilized by a sling.

There was evidence of an altercation between plaintiff and an employee of the hospital at noon on April 10. Harriet Mirsch, a nurses' aid, testified that plaintiff refused his breakfast and lunch trays, cursing her both times. Rose Sanchez, another nurses' aid, then took the noon tray to plaintiff. While the two aids were attempting to help plaintiff to a sitting position, he kicked Sanchez in the stomach. Sanchez testified that she then threw tea on the plaintiff and he threw soup at her. Joseph Hamilton, another bed patient in the room, testified that he saw the plaintiff kick the nurses' aid and throw something at her; that she then threw something at plaintiff. As to this incident, plaintiff testified that an aid threw tea and dishes at him, but he had never kicked or struck any nurses' aid.

### Evidence on behalf of plaintiff regarding the evening of April 10:

Plaintiff's daughter, Nancy Felton, testified that, when she arrived to visit her father, defendant told her that he wanted the plaintiff out of the hospital in five minutes. After she relayed this message to her father, he went into the hall and talked with defendant. Defendant told both of them that plaintiff would need another doctor. While she was trying to telephone other doctors,

205

■■■■■■■

her father started to go downstairs to leave the hospital. At this time plaintiff was wearing trousers, shirt, and only one shoe. Defendant grabbed her father by the shoulders and arms, then told him that he was going to call the police, and that plaintiff was going to a "psycho" hospital. Dr. Alice Buckley returned the daughter's telephone call and talked to her father and Dr. Coyle. The daughter accompanied her father to Fairview Sanitarium.

Plaintiff testified that his daughter told him that defendant was going to send him to a mental hospital because he had kicked a nurse. Plaintiff started to dress to leave the hospital, but defendant led him back to bed. Defendant then told him he would have to go to a psychiatric hospital, and that the only way he could leave was to get a different doctor and go to another hospital. While his daughter was trying to contact other doctors, plaintiff again tried to leave the hospital. As he reached the stairway landing, defendant overtook him and directed him forcibly back to his room. Dr. Buckley returned his daughter's telephone call and informed plaintiff that she could get him a bed at Fairview Sanitarium. Defendant called the ambulance and plaintiff was taken to the sanitarium.

Officer Doyle of the Chicago Police Department testified that he was sent to the hospital. Upon his arrival, he was directed by hospital employees to see the plaintiff patient and defendant doctor. Defendant requested that he take the plaintiff to the psychiatric unit of the Cook County Hospital but he refused because plaintiff appeared to be quite sensible and doing nothing out of the ordinary.

**Evidence on behalf of defendant regarding the evening of April 10:**

Defendant testified that he went to the hospital after receiving a telephone call that the plaintiff could not be controlled. When he arrived, the plaintiff was stand-

206

ing in the doorway of his room partially dressed. When plaintiff said he wanted to go home, defendant told him to stop misbehaving and led him back to his bed. Defendant also told the plaintiff that if he did not wish to follow instructions he should get another doctor and go to a different hospital. Although he did not impose any five-minute limitation on plaintiff, he did believe that plaintiff needed another doctor to treat him. However, he testified that he could not withdraw as doctor without seeing that the patient was under the care of another doctor. Later that evening plaintiff again started to leave the hospital. Defendant overtook the plaintiff and, after taking him by the left arm, led him back to bed, using a degree of force. After consulting with a staff psychiatrist, defendant started to fill out a form for the commitment of plaintiff to the psychiatric unit of the Cook County Hospital, but he did not complete the form and discarded it. Defendant did not call the police nor did he ask the police to take plaintiff away. Defendant called the ambulance service at the request of Dr. Buckley.

Dr. Buckley testified that she made arrangements for a bed for plaintiff at the Fairview Sanitarium after talking to plaintiff and his daughter. She made these arrangements at the request of the plaintiff. She met both plaintiff and his daughter at the sanitarium at which time the daughter executed a form for his admittance. He was released from the sanitarium the following Sunday without Dr. Buckley's knowledge or consent.

Plaintiff first urges that certain remarks made by counsel for defendant in his opening statement were so prejudicial as to require reversal of the judgment. The remarks in question were as follows:

"COUNSEL FOR DEFENDANT: I think the evidence will show numerous incidents that will help in evaluating the situation to the injury. In those sub-

sequent that Dr. Buckley, who had attended members of his family including Mr. Felton, had given him a bill for services . . .

"COUNSEL FOR PLAINTIFF: Object, Your Honor.

"THE COURT: I am going to overrule your objections.

"COUNSEL FOR DEFENDANT: The bill was for services rendered to Mr. Felton and a small sum for his service . . . The total bill was $63.00 . . . The bill was unpaid and they brought suit against Mr. Felton for a $60.00 bill and $3.00 for cost . . . Mr. Felton through his attorney, . . . brought counterclaim against Dr. Buckley, and I may verify by stating that Dr. Buckley had imprisoned him in the Fairview Sanitarium and that she had committed other wrongs against him in connection.

"COUNSEL FOR PLAINTIFF: Object.

"THE COURT: Overruled."

██ ██ Plaintiff contends that these comments were made by defendant for the sole purpose of discrediting plaintiff as a deadbeat, and that the court committed prejudicial error in allowing the remarks to stand. The function of an opening statement is to enable a party to advise the jury what he expects to prove. "The discretion of the court as to the scope of the opening statements by counsel, either in point of time or relevancy, will not be interfered with on review except in rare cases of arbitrariness amounting to abuse." Hettinger v. Beiler, 54 Ill App 320 (1894).

 The complaint in the instant case charged that defendant had committed plaintiff to the sanitarium. In the above quoted remarks, counsel for defendant informed the jury that in a separate suit, plaintiff had

counterclaimed that Dr. Buckley imprisoned him in the sanitarium. During the trial, plaintiff testified on cross-examination that he had in fact made these charges against Dr. Buckley in a prior verified complaint. The counterclaim against Dr. Buckley constituted an admission contrary to plaintiff's allegation that it was defendant who committed him. It was proper evidence. It was also proper to inform the jury in opening statement that it was a fact which defendant would prove. While we agree with plaintiff that reference to the unpaid bill and $3 cost was irrelevant, we consider such allusion to have been harmless error. No prejudicial error was committed in the opening statement.

■ ■ Plaintiff next asserts that the court erred in not directing a verdict in favor of plaintiff as to liability. The law in Illinois as to directed verdicts was set forth by our Supreme Court in Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1967) where it was stated: "Verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

■ Plaintiff contends that liability must be imposed as a matter of law because defendant admitted restraint, while defendant maintains that medical discretion is an absolute defense to the charge of restraint of liberty of a patient. We do not accept either contention. The issue as to whether there was justification for the conduct of the defendant was a question of fact for the jury and properly presented to them. Plaintiff had sustained a fracture of the right clavicle, requiring immobilization and complete bed rest. A cast was to be applied on the following day. While only partially dressed and wearing one shoe, plaintiff was attempting to leave the hospital unattended. Even his daughter attempted to keep him from leaving. It is clear that the situation was serious

and demanded an immediate decision. At that point, defendant took plaintiff by the left arm and led him back to bed. Under the facts and circumstances of the case, it was properly presented to the triers of fact to determine whether plaintiff was improperly detained.

 Plaintiff next contends that the court erred in not giving plaintiff's tendered instruction No. 12 which stated:

> "There was in force in the State of Illinois at the time of the occurrence in question a certain code known as the mental health code which provided for involuntary emergency admission to a hospital in the following manner:
>
> > "(a) Any person could petition the superintendent of a hospital alleging a person to be mentally ill or in need of mental treatment.
>
> "If you decide that Joseph Coyle failed to comply with the terms of this code on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not Joseph Coyle was guilty of misconduct at the time of the occurrence."

The court properly refused said instruction. The statute referred to in the instruction had no application to defendant since he had not admitted plaintiff to any hospital for a mental disorder. All the evidence, including the testimony of the plaintiff, indicated that Dr. Buckley arranged for plaintiff's placement in the sanitarium. Merely because defendant started to fill out a commitment form to Cook County Hospital would not have justified the giving of such an instruction. Instructions should be given only as to issues that are in evidence.

 Plaintiff also urges that it was error to give defendant's instructions 2(a) and 8. An instruction can-

not be urged as error on appeal unless a specific objection has been raised to it in a conference on instructions and in the post-trial motion; and the objection must be specific enough to fairly inform the trial judge of the basis of the objection. Allen v. Howard Bowl, Inc., 61 Ill App2d 314, 210 NE2d 342 (1965). The record does not disclose that any objection was made to instruction No. 2(a). There is only a parenthetical reference to the fact that objection was made to instruction No. 8. No reasons for the objection to instruction No. 8 were given. Any error in the giving of these two instructions cannot now be urged.

 Finally, plaintiff contends that the court erred in striking Officer Doyle's answer as follows:

"Q: What, if anything, specifically, did you observe about his (defendant's) manner of speech?

"A: I hardly think I could be the judge of that, but it seemed to me that he had been drinking."

On motion of defendant the court struck the answer and instructed the jury to disregard it. While the question posed to the witness was proper, the answer was improper since it volunteered information not responsive to the question. There was no question pending as to whether defendant had been drinking. Nor were there any further questions asked of the witness on that subject. The answer was properly stricken.

Since we have considered the merits of the appeal, it is not necessary to consider defendant's motion to dismiss the appeal.

For the reasons stated above, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

BURKE, P. J. and LYONS, J., concur.