THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS BAER *et al.*, Defendants-Appellants.

First District (5th Division) No. 61590

Opinion filed January 9, 1976.—Rehearing denied February 19, 1976.

392

Robert E. Cronin, of MacDonald, Hanley, Cronin & Supena, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and William J. Stacy, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

Defendants were indicted for murder and armed robbery. In the first trial, the State chose to proceed against Baer separately and he was convicted of armed robbery. However, the jury was unable to reach a verdict on the murder count, and a mistrial was declared as to that charge only. Subsequently, both defendants were tried together, and each was convicted of murder. Wizniuk was also convicted of robbery. Baer received a sentence of 20 to 40 years for murder and 5 to 15 years for armed robbery. Wizniuk was sentenced to 20 to 40 years for murder and 3 to 9 years for robbery.

In this single appeal from both trials, each defendant has filed briefs in which both contend that the State failed to prove beyond a reasonable doubt that they were guilty of murder. In addition, Baer contends that (1) the court improperly restricted inquiry into the quarrelsome nature of the deceased and gave a misleading instruction on self-defense; and (2) his conviction of armed robbery was based upon written statement taken in violation of his constitutional right against self-incrimination. Wizniuk separately asserts that (1) reversible error was committed when the testimony of an accomplice was admitted which linked him with the plot to rob the deceased; and (2) his right to a fair trial was impaired by the prosecutor's improper comments concerning the testimony of this accomplice and by the failure of the trial judge to order separate trials.

From the testimony received in Baer's first trial, it appears that Robert Rothwell was found unconscious behind a restaurant, the apparent victim of a robbery. He never regained consciousness and died four and one-half months later. When the investigation began to focus on Baer, he voluntarily appeared for questioning and made two incriminating written statements. In the first, he admitted only that he had been involved in a fight with Rothwell. In the second, made the following morning, he stated (1) that he and Wizniuk had decided to rob Rothwell after observing him in possession of several hundred dollars while playing pool; and (2) that Ralph Arellano was recruited by Wizniuk to assist in the robbery. These statements were admitted into evidence over objection that they were not voluntarily given.

Further, in this first trial of Baer, Arellano testified for the State that he was asked to participate in the robbery by Wizniuk while they were in a car following Baer and Rothwell to a restaurant. After they arrived, he saw Rothwell on the ground with Baer on top of him, and he then observed Baer jump on Rothwell who was lying face upward. He helped Baer rob the unconscious victim of his wallet, and the three of them left in Wizniuk's car. Arellano's cross-examination elicited the fact that in return for his testimony the State had agreed to drop the murder charge against him and to recommend a sentence of two years for robbery. Credit for time he had already served was also to be given, which would leave little time to serve on the recommended sentence.

The only other relevant testimony at this trial was that of the doctor who had performed the autopsy on Rothwell. He stated that the cause of death was secondary pneumonia brought on during Rothwell's convalescence. This doctor also testified that a 3.0 milligram accumulation of morphine in the liver bile of the deceased was of no significance.

After the mistrial was declared on the murder charge, it was agreed that defendants would be tried together in a second trial with the proviso that the statements of Baer which had been introduced in his first trial would not again be offered into evidence.

In that second trial, Denise Netrafa, Baer's former girl friend, testified for the State that Baer had related his part in the incident to her. On cross-examination, she admitted that Baer had jilted her for a mutual friend and that she presently had a paternity suit pending against him. She also admitted that she had used drugs in the past.

Arellano then testified substantially as he had in Baer's first trial and Dr. Shalgos, the supervising physician at the autopsy, testified that Rothwell had been comatose due to traumatic degeneration of the brain and spinal cord cells caused by a blow to the head, and that his enforced

convalescence eventually resulted in extensive secondary pneumonia—from which he died.

OPINION

Defendants jointly contend that the requisite proof of murder was lacking because the State failed to prove beyond a reasonable doubt that Rothwell's death was not the result of intervening causes.

■■ As a part of the *corpus delecti*, the prosecution must establish that death resulted from a criminal agency. (*People v. Wilson*, 400 Ill. 461, 81 N.E.2d 211.) However, once the State has shown "the existence, through the act of the accused, of a sufficient cause of death, the death is presumed to have resulted from such act, unless it appears death was caused by a supervening act disconnected from any act of the defendant." (*People v. Meyers*, 392 Ill. 355, 359, 64 N.E.2d 531; see also *People v. Brown*, 9 Ill.App.3d 730, 293 N.E.2d 1.) Thus, in *People v. Stamps*, 8 Ill. App.3d 896, 291 N.E.2d 274, where it was indicated that the deceased strangled on his own blood during emergency surgery and it was contended that the sole cause of death was lack of proper treatment, the court held that the cause of death was the gunshot wound that had compelled the surgery. Similarly, in *People v. Paulson*, 80 Ill.App.2d 44, 225 N.E.2d 424, where the cause of death was meningitis resulting from an infection which developed during an operation necessitated by a head injury allegedly inflicted by defendant, it was held that the meningitis was not disconnected from the act of defendant.

In this case, it is apparent that the acute secondary pneumonia resulted directly from paralysis induced by the blow to the head. It was not a separate intervening act disconnected from the injury inflicted, and therefore will not relieve defendants from liability for the death of Rothwell. *Meyers*.

■■ Defendants correlatively urge that the unexplained presence of morphine in Rothwell's body raises a reasonable doubt as to the cause of death. However, there was no evidence presented that the quantity of morphine found was the cause or even a contributing cause of death. To the contrary, the pathologist testified that the presence of morphine was unrelated to the cause of death. In view thereof, we see no merit in this contention.

Baer separately contends that the trial judge improperly restricted his self-defense plea by excluding inquiry into the quarrelsome nature of the deceased. The record reflects that at Baer's separate trial, objections were sustained to certain questions intended to elicit such information. Counsel first asked the stepmother of the deceased, "On May 4, 1971

was your son Robert in a matter with the Police Department?" An objection was sustained, and he then inquired of Officer DePayola concerning a previous arrest incident involving the deceased, by which he expected to establish that Rothwell had been arrested for assault and battery.[1] Again, an objection was sustained.

It appears to be the rule that where the general reputation of the deceased is in issue, specific acts of prior aggression are not admissible. This is true because general reputation, while probative of character, is an aggregate of facts which create a general impression. Because only the general impression may be testified to, a specific prior instance would be irrelevant to the issue of general reputation. See generally Wigmore on Evidence §§ 52, 920, 1608 (3d ed. 1940).

It is apparent here that the defense was attempting to show that Rothwell was the aggressor and that defense counsel's questions were intended to establish a character trait of the deceased and not his reputation. As such, we believe the better reasoned authorities permit an inquiry into the propensity of the victim for violent aggression where the plea is self-defense. (See 1 Wigmore on Evidence § 63 (3d ed. 1940) and authorities therein cited.) Further, specific prior incidents of violent aggression by the victim may be admissible as tending to show that he was the aggressor in the incident. 1 Wigmore on Evidence § 198 (3d ed. 1940).

■■ However, we do not believe that the interrogation in question here is relevant to the issue of Rothwell's allegedly violent nature. The questions sought to establish that deceased had been arrested in 1971 for disorderly conduct, which would not in itself establish a tendency towards violence. There is nothing in the record to indicate that this arrest resulted from an act of violence or, if it did, that the deceased was the aggressor. Further, a mere arrest is not sufficient to establish that Rothwell actually performed any of the acts charged. See *Ruffalo's Trucking Service, Inc. v. National Ben-Franklin Insurance Co.*, 243 F.2d 949 (2d Cir. 1957); *People v. Halkens*, 386 Ill. 167, 53 N.E.2d 923; *People v. Schultz-Knighten*, 277 Ill. 238, 115 N.E. 140; 3 Wigmore on Evidence § 980a (3d ed. 1940).

Moreover, assuming arguendo that the questions were proper, there could have been no harm in their exclusion. A mistrial was declared on the murder charge in Baer's first trial in which the questions were propounded, and self-defense is obviously not available as a defense to his

---

[1] Defense counsel apparently was referring to an arrest incident which occurred on May 4, 1970, instead of May 4, 1971. The record reflects that this incident did not involve assault and battery, but was merely an arrest for disorderly conduct.

armed robbery conviction. No attempt was made during Baer's second trial on the murder charge alone to inquire into the quarrelsome nature of Rothwell.

■■ As an additional argument that the self-defense issue was improperly restricted in the second trial, defendant contends that an improper instruction on the justifiable use of force was given. He suggests that two other instructions should have been given instead. We note, however, that all instructions given to the jury were submitted by agreement of the parties, as indicated in the record, as follows:

> "There was a conference on instructions and all State and all defense instructions were given by agreement of both sides. They are marked given.
>
> MR. VISDAL: It was so agreed."

Consequently, any alleged defects in the instructions cannot now be raised for the first time on appeal. (*Felton v. Coyle,* 95 Ill.App.2d 202, 238 N.E.2d 191.) Further, defendant did not tender the two instructions he suggests should have been given and thus cannot complain that they were not given. (*People v. Lenker,* 6 Ill.App.3d 335, 285 N.E.2d 807.) In any event, we feel that other instructions given to the jury adequately informed them on the self-defense issue.

Finally, Baer asserts his conviction for armed robbery resulted from written statements taken from him in violation of his constitutional right against self-incrimination. The police officers testified that when they initially questioned defendant about the occurrence, he stated "I wasted a dude." When he said this, the officers testified that they immediately interrupted and gave him the necessary *Miranda* warnings. They stated that Baer nonetheless indicated a desire to make a statement and signed forms acknowledging a waiver of his right against self-incrimination. An assistant State's attorney was summoned, and Baer dictated a statement in his presence. The officers testified that the following morning Baer voluntarily gave another statement in which he revealed the robbery plan. Both statements were written up and reviewed by Baer, who signed them after initialling some corrections.

At a pretrial hearing on defendant's motion to suppress the statements, Baer stated that they were coerced by the police officers' threats of violence; that the police misled him into believing he had no choice but to sign the statements; that he signed the statements only after being told that other participants had made statements fixing the sole blame on him; and that his request to call his father was denied.

The investigating officers testified that the statements were voluntarily given. They denied any coercion or threats of any kind and stated that defendant declined their offer to let him use the telephone.

■■ The purpose of a suppression hearing is to determine the admissibility of the statement. (*Jackson v. Denno*, 378 U.S. 368, 12 L.Ed.2d 908, 84 S.Ct. 1774.) The burden of proof rests with the State to show that statements of an accused in derogation of his right against self-incrimination are voluntary. (*Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602; Ill. Rev. Stat. 1969, ch. 38, par. 114—11(d).) However, the State need not prove the voluntariness of the statement beyond a reasonable doubt but only by a preponderance of the evidence. (*Lego v. Twomey*, 404 U.S. 477, 30 L.Ed.2d 618, 92 S.Ct. 619.) Coerced statements are of course inadmissible. *People v. O'Leary*, 45 Ill.2d 122, 257 N.E.2d 112.

■■■ In this case, we feel that the statements were properly admitted. Baer's initial oral statement that he "wasted a dude" was apparently of such a spontaneous nature that the police had no opportunity to stop it. As to the two written statements, we believe the State sustained its burden of establishing their voluntary character. While Baer's age (19) is a factor to be considered (*People v. Baker*, 9 Ill.App.3d 654, 292 N.E. 2d 760), as is the fact that he was held overnight without being arraigned (*People v. Harper*, 36 Ill.2d 398, 223 N.E.2d 841), these factors are not determinative. The trial judge was not required to accept Baer's unsubstantiated testimony of police coercion. *People v. Gavurnik*, 2 Ill.2d 190, 117 N.E.2d 782.

In the first of Wizniuk's separate contentions, he urges that reversible error was committed when Arellano, an accomplice, was permitted to testify to a conversation in which Wizniuk asked him to participate in the robbery plan. It is Wizniuk's position that this was an inadmissible hearsay statement of a coconspirator.

■■ It is the prevailing rule that when a conspiracy has been established, the statement of one conspirator in furtherance of their plan is admissible against the other conspirators. (*People v. Trigg*, 97 Ill.App.2d 261, 240 N.E.2d 130; *Glasser v. United States*, 315 U.S. 60, 86 L.Ed. 680, 62 S.Ct. 457.) Using this reasoning, Wizniuk argues that the existence of a conspiracy was not established by any proof independent of Arellano's testimony and that therefore it was improperly admitted. We disagree. Arellano testified to a conversation he had with Wizniuk in the latter's car on the way to the restaurant during which Wizniuk recruited him to assist in the robbery. They were following the car in which Baer and Rothwell were riding, and both cars stopped side by side at the restaurant. This conversation was admissible as substantive evidence of the fact of a conspiracy and, as such, was an exception to the hearsay rule. (4 Wigmore on Evidence § 1079 (3rd ed. 1940); see also *Maltby v. Chicago Great Western Ry. Co.*, 347 Ill.App. 441, 106 N.E.2d 879.) Further, although

the conversation may have been admitted in evidence before sufficient proof of the conspiracy had been given, it was within the discretion of the court to so receive it. (*Trigg*; *People v. Andrews*, 327 Ill. 162, 158 N.E. 462.) Arellano's subsequent testimony of participation in the robbery and the fact that all three left the scene together furnishes independent evidence of a concerted course of conduct sufficient to establish the existence of a conspiracy to rob Rothwell, and thus removes any bar in that regard to the admission of Arellano's testimony. See *People v. Field*, 13 Ill.App.3d 74, 299 N.E.2d 754.

Wizniuk next contends that in closing argument the prosecutor misrepresented the law regarding the weight to be given an accomplice's testimony and improperly argued that Wizniuk was aware of Arellano's criminal record.

As a general rule, the testimony of an accomplice should be received with caution, viewed with suspicion, and acted on only after careful consideration. (*People v. Mentola*, 47 Ill.2d 579, 268 N.E.2d 8.) The rationale for this rule is that the testimony of an accomplice given in exchange for leniency is inherently suspect.

■■ Here, the record discloses that the trial judge properly instructed the jury on the weight to be given the accomplice's testimony, and that defense counsel did not object to the alleged improper remarks. Where comments are not obviously prejudicial, a timely objection is required. (*People v. Underhill*, 38 Ill.2d 245, 230 N.E.2d 837, *cert. denied*, 391 U.S. 912, 20 L.Ed.2d 651, 88 S.Ct. 1803.) The failure to object at trial operates in general as a waiver of that right on appeal (*People v. Nuccio*, 54 Ill.2d 39, 294 N.E.2d 276) except where the arguments complained of are so prejudicial that they should be considered on appeal under the plain error rule. *People v. George*, 49 Ill.2d 372, 274 N.E.2d 26; see also *People v. Wright*, 65 Ill.App.2d 23, 212 N.E.2d 126.

From our examination of the record, it appears to us that the plain error rule should not be applied. We believe that the comments were inferences or conclusions drawn from the evidence and, as such, were permissible. *People v. Shack*, 396 Ill. 285, 71 N.E.2d 633.

Wizniuk next challenges the competence of his legal representation. He points out several alleged trial errors to which no objections were made and to certain trial tactics of his counsel which he believes were unfavorable to him. He concludes that he did not receive the effective assistance of counsel contemplated by the Sixth Amendment.

■■ Where a defendant has been prejudiced by acts or omissions of his counsel, he may be entitled to a new trial where his representation was inadequate. (*People v. Kuczynski*, 33 Ill.2d 412, 211 N.E.2d 687.) However, the fact that another attorney in the better light of hindsight

might possibly have handled the trial in a different manner, should not be accepted as an indication of incompetency of counsel (*People v. Dean,* 28 Ill.App.3d 196, 328 N.E.2d 130), and it is well settled that a review of a retained counsel's competence does not extend to those areas involving the exercise of judgment, discretion and tactics. (*People v. Somerville,* 42 Ill.2d 1, 245 N.E.2d 461.) Before a conclusion of inadequate representation can be reached, defendant must clearly establish actual incompetence of his counsel and substantial prejudice resulting therefrom, without which the outcome would have been different. (*Dean.*) From our examination of the record, we cannot say that defendant has satisfied this burden. We are of the further opinion that the trial omissions complained of involve matters of judgment, discretion or tactics, and it appears to us that Wizniuk was otherwise well represented. Accordingly, we reject his request for a new trial on grounds of incompetence of counsel.

■■ Finally, Wizniuk asserts he was prejudiced by the court's failure to order separate trials. A joint trial of codefendants is to be encouraged. (*People v. Stock,* 56 Ill.2d 461, 309 N.E.2d 19.) While the trial judge may order a severance (Ill. Rev. Stat. 1973, ch. 38, par. 114—8), the test is whether the defense of one of the defendants is so antagonistic to the other as to deny a fair trial. (*People v. Rosenborgh,* 21 Ill.App.3d 676, 315 N.E.2d 545, *cert. denied,* 421 U.S. 919, 43 L.Ed.2d 787, 95 S.Ct. 1584.) There is no abuse of discretion in ordering a joint trial by the mere fact that testimony is admitted under cautionary instructions that it be considered only against one defendant and not the other. (*People v. Mutter,* 378 Ill. 216, 37 N.E.2d 790.) It is apparent from the record before us that defense counsel agreed to the joint trial with an understanding that the State would not introduce the incriminating statements made by Baer. In view thereof and considering that proper cautionary instructions were given, we do not believe that the joint trial deprived Wizniuk of his right to a fair trial.

For the reasons stated, the judgments are affirmed.

Affirmed.

LORENZ, P. J., and BARRETT, J., concur.