**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2000-CA-00202-SCT**

*GENIA A. MORGAN*

*v.*

*BRENDA GREENWALDT, SUSAN BROTHERTON, MELINDA LEAH LEWIS AND ST. DOMINIC-JACKSON MEMORIAL HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/10/1999 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | E. MICHAEL MARKS |
| | JULIE ANN EPPS |
| ATTORNEYS FOR APPELLEES: | CHRISTOPHER A. SHAPLEY |
| | ANDREA LA'VERNE FORD EDNEY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 05/24/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/14/2001 |

**BEFORE BANKS, P.J., SMITH AND WALLER, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Genia A. Morgan ("Morgan") sued St. Dominic-Jackson Memorial Hospital ("Hospital"), and two of the Hospital's nurses, Brenda Greenwaldt and Susan Brotherton, and a psychiatric technician, Melinda Leah Lewis, over an incident that occurred in June 1996. Morgan alleged that she had been assaulted and battered, falsely imprisoned, and treated negligently while she was a patient. She also sued for intentional infliction of emotional distress. The trial court granted a directed verdict for all the defendants on the issues of assault and battery, false imprisonment, gross negligence, and intentional infliction of emotional distress, but allowed the jury to determine if the defendants were negligent in their treatment of Morgan. After four days of trial, the jury returned a verdict in favor of the defendants, and the trial court entered judgment accordingly. Morgan's motion for a new trial was denied January 4, 2000, and thereafter she appealed to this Court. We find no reversible error and affirm the judgment of the trial court.

## FACTS

¶2. Genia Morgan started seeing a psychiatrist in 1990 for depression. In early June 1996, Morgan's psychiatrist, Dr. Barbara Goff, suggested that Morgan voluntarily check into the psychiatric unit of the Hospital due to her severe depression and sleep disorder. Dr. Goff wanted Morgan in a monitored environment while she worked on adjusting Morgan's medication. At the time of her admission, Morgan was having suicidal thoughts, and her depression had advanced to the stage where she had given up her job. Also, Morgan was experiencing hallucinations and trances which required an adjustment in her anti-psychotic medication. During her admission assessment, Morgan reported having a metaphysical

experience. Morgan described this experience to the admitting nurse as one where "[she] was lying in bed when something grabbed [her] neck and then it let go when [she] started to pray." Upon her admittance into the Hospital, Morgan signed a Consent to Treatment Form authorizing the Hospital to treat her for illness. She was placed on the intermediate ward where patients were free to walk around the floor and mingle with other patients.

¶3. On June 18, 1996, Morgan went to the nurses' station and asked for a bottle of hydrogen peroxide that she said she had brought to the Hospital with her. She claimed that it was her practice to brush her teeth with hydrogen peroxide. Nurse Susan Brotherton looked for the hydrogen peroxide but could not locate it. Melinda Leah Lewis, a psychiatric technician, and Brotherton checked Morgan's personal belongings checklist, which is filled out upon a patient's admittance to the Hospital. The hydrogen peroxide was not listed on the sheet as one of the items brought in by Morgan. Brotherton told Morgan that she would call Dr. Goff to get an order for the hydrogen peroxide. Brotherton called Dr. Goff's office and left a message regarding the peroxide and its intended use by Morgan as a mouth rinse. Dr. Goff stated that Morgan could not have the peroxide but could have Cepacol mouthwash instead. Brotherton informed Morgan of the doctor's orders. Morgan became upset and left the unit. Thereafter, she retreated to her room crying.

¶4. Brotherton, Lewis, and technician Jeannie Smith walked toward Morgan's room to see what was wrong. Brotherton and Lewis entered the Morgan's room. Morgan was lying across the bed crying. In an effort to calm her down, Brotherton told Morgan that even though there was no record of her bringing the hydrogen peroxide into the Hospital, the Hospital could reimburse her if she believed the Hospital was responsible for the loss. According to Brotherton's testimony, Morgan began yelling profanity and ordered the nurses out of her room. The nurses returned to their station.

¶5. Shortly thereafter, Morgan came out of her room and approached the nurses' station. According to Brotherton and Lewis, Morgan yelled, used profanity, and demanded her hydrogen peroxide. She walked to the nurse manager's door and began pounding her fist on the door. At this point, Dr. Goff was again called, and Brotherton left a message with the doctor's secretary that Morgan was out of control and was acting in a hostile manner. Due to the escalating situation, Brotherton called the nursing supervisor, Brenda Greenwaldt. When Greenwaldt arrived and introduced herself, Morgan started ranting and raving that she demanded an apology. Morgan then proceeded to pound her fist on the nurses' station desk and point her finger in nurse Greenwaldt's face. According to Greenwaldt, Brotherton, and Lewis, the patient appeared totally out of control and became a threat to the safety of herself and others.

¶6. At this point, Greenwaldt asked for security backup. Leah Lewis made a "446" call. Such a call is a security code used by the Hospital staff to alert other staff members that back-up help is needed due to a patient getting out of control. Again, Brotherton called Dr. Goff to inform her that the situation had escalated and that a "446" had been called. Dr. Goff was in a session with a patient when Brotherton called; however, she returned the call just as personnel were responding to the "446" call. At this point, the testimonies differed. According to Dr. Goff, she "specifically and absolutely did not say it was okay to put her in seclusion." However, according to Brotherton, Dr. Goff told her to move the patient to a protective environment until she had calmed down and to prevent giving her any sedating medication. Specifically, Greenwaldt wrote an order that stated "[p]lace in seclusion for threatening staff for four to six hours until calm and nonthreatening."

¶7. Several witnesses testified that Morgan was escorted, without any physical contact, to the seclusion

area. Even Morgan stated in her testimony that she walked to seclusion on her own accord. According to Morgan, she was strip searched and forced to change into a Hospital gown in front of several people. However, various staff members of the Hospital testified that it was standard procedure for someone in seclusion to be searched for dangerous instrumentalities and to change into a Hospital gown. Further, according to Hospital personnel, Leah Lewis stood in front of the window to the seclusion door so there would be privacy. Morgan was left in seclusion for about two hours, from 4:30 p.m. until 6:45 p.m.

¶8. Morgan raises the following issues on appeal:

> **I. WHETHER THE TRIAL COURT PROPERLY DIRECTED A VERDICT ON ALL COUNTS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, FALSE IMPRISONMENT, GROSS NEGLIGENCE, AND ASSAULT AND BATTERY?**
>
> **II. WHETHER THE TRIAL COURT ERRED IN REFUSING A CONTINUANCE?**

## ANALYSIS

### I.

¶9. At the close of the testimony, the defendants moved for a directed verdict on all counts except the medical malpractice negligence claim. The trial court granted the motion, thereby taking from the jury the claims of intentional infliction of emotional distress, false imprisonment, gross negligence, and assault and battery. Morgan argues that there was sufficient evidence to make out a jury question on all of these claims, and thus, the directed verdict for the defendants was reversible error.

¶10. This Court conducts a de novo review of a motion for directed verdict. ***Northern Elec. Co. v. Phillips***, 660 So.2d 1278, 1281 (Miss. 1995). If we find that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted. ***Id.*** (citing ***Pittman v. Home Indem. Co.***, 411 So.2d 87, 89 (Miss. 1982)). This Court has also held that an issue should only be presented to the jury when the evidence creates a question of fact on which reasonable jurors could disagree. ***Herrington v. Spell***, 692 So.2d 93, 97 (Miss. 1997).

### A. False Imprisonment

¶11. False imprisonment has only two elements: "detention of the plaintiff and the unlawfulness of such detention."***Lee v. Alexander***, 607 So.2d 30, 35 (Miss. 1992) (citing ***Page v. Wiggins***, 595 So.2d 1291 (Miss. 1992); ***Thornhill v. Wilson***, 504 So.2d 1205, 1208 (Miss. 1987) (citing ***State ex rel. Powell v. Moore***, 252 Miss. 471, 174 So.2d 352, 354 (1965); ***Hart v. Walker***, 720 F.2d 1436, 1439 (5th Cir. 1983))).

¶12. Morgan contends that the trial court erred in granting a directed verdict because she was locked up against her will, and the determination of whether her detainment was a reasonable one should have been a question of fact for the jury. This Court finds that such an argument lacks merit. Morgan consented to the treatment at the Hospital, and such treatment includes placing patients who are out of control in a secure environment for the protection of both the patient and the others at the Hospital.

¶13. The evidence indicates that prior to the 1996 incident in question, Morgan had undergone a psychological evaluation that concluded she was suffering from personality disorders. She had a history of

mental illness dating back to 1990 and was diagnosed as having been severely depressed upon her admittance to the Hospital in June of 1996. She also suffered from hallucinations and crying episodes. Moreover, on the morning of the alleged incident, Morgan's doctor noted in the medical records that she was experiencing trances that lasted up to fifteen minutes.

¶14. Morgan argues that the mere fact that she was undergoing treatment in a Hospital does not mean that the Hospital is justified in performing any medical procedures it deems warranted. Although such an argument is a valid one, it is not warranted in the case sub judice. The cases Morgan cites as support for such an argument are not applicable to the case at bar. Such cases deal with situations where the appellant did not consent to the treatment or was detained upon a request or attempt of the patient to leave the Hospital. *Felton v. Coyle*, 238 N.E.2d 191 (Ill. 1968); *Fox v. Smith*, 594 So.2d 596 (Miss. 1992). Genia Morgan voluntarily signed an Authorization for Treatment form when she was admitted to the Hospital. Moreover, there was substantial testimony to support the fact that Morgan was out of control and was posing a threat to the environment, including herself. Confinement in a secured environment is a common method of treatment in psychiatric wards and Hospitals. The Hospital is charged with the duty of maintaining a safe and secure environment for all patients. The evidence showed that Morgan was acting in a way that clearly conveyed the possibility of violence.

¶15. Morgan relies on *Fox v. Smith*, 594 So.2d 596 (Miss. 1992), to bolster her argument that the mere fact that she was undergoing treatment in a Hospital does not mean that the Hospital is justified in performing any medical procedure it deems warranted. In *Fox*, the patient was admitted to the Hospital for a laparoscopy and alleged that the removal of an intrauterine device was done without her consent. *Id.* at 596. This case can clearly be distinguished from the case at bar since the patient in *Fox* initially refused to sign the consent form because she objected to a clause in the form which authorized the Hospital to dispose of severed tissues or specimens. *Id.* at 599. The Court stated that *Fox* turned on the issue of consent, or not, for the removal of the patient's intrauterine device. *Id.* at 597. This Court made clear that a patient's informed consent to treatment is a prerequisite to treatment, and because a material dispute existed on important facts concerning the patient's consent, the question should have been presented to the jury. *Id.* at 604.

¶16. In comparison, Morgan clearly consented to treatment by the doctors and personnel at the Hospital by signing the consent form. Moreover, Morgan never retracted her consent to receive treatment. She never informed the nurses that she refused their treatment or that she wanted to leave the Hospital. Indeed, she even voluntarily walked to the isolation room.

¶17. Morgan also relies upon *Felton v. Coyle*, 238 N.E.2d 191 (Ill. 1968), for her argument that she was falsely imprisoned. This case is not only factually distinguishable from the case at bar, but is also from another jurisdiction and, therefore, not controlling on this Court. In *Felton*, the patient suffered a broken clavicle and was taken to a Chicago Hospital for treatment. *Id.* at 192. After an altercation between the patient and Hospital personnel, patient's doctor ordered him out of the Hospital. *Id.* When the patient attempted to leave the Hospital, the doctor grabbed the patient by the shoulders and told him he was going to call the police. *Id.* at 193. The doctor then sent the patient to a psychiatric Hospital. *Id.* The trial court issued a directed verdict in favor of the defendant, and on appeal the patient argued that he was entitled to a directed verdict. *Id.* at 194. The appellate court disagreed, holding that under the facts and circumstances of the case, it was properly presented to the trier of fact to determine whether the patient was improperly detained. *Id.*

¶18. Unlike ***Felton***, here there were no efforts by the Hospital to prevent Morgan from leaving the Hospital at her will. Morgan did not leave the Hospital until two days after the alleged incident. Even after that time, she continued to attend classes at the Hospital.

¶19. The trial court properly directed a verdict on the issue of false imprisonment. There is simply no proof in the record of the unlawfulness of Morgan's detention. She voluntarily signed an authorization for treatment form. She had a history of psychological problems, and there was substantial testimony to support the fact that she was out of control and was posing a threat to herself and to others.

## B. Assault and Battery

¶20. An assault occurs where a person (1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such contact, and (2) the other is thereby put in such imminent apprehension. ***Webb v. Jackson***, 583 So.2d 946, 951 (Miss. 1991) (citing Restatement (Second) of Torts § 21 (1965)). A battery goes one step beyond an assault in that a harmful contact actually occurs. ***Id.***

¶21. Morgan presented no evidence to support either an assault or battery claim against the defendants. Morgan contends that she was battered when the nurses rolled her over while she was lying in her bed and that one of the attendants touched her pants when she was in seclusion. There was no testimony to indicate that these contacts, if any, were unprivileged, unlawful, or offensive. Moreover, there was no evidence presented to indicate that the actions taken by the Hospital staff were not part of her treatment which Morgan clearly authorized. At trial, Morgan did not state that being rolled over by nurses was an attempt to do bodily harm to her or that she was fearful that harm would be done to her. Rather, she testified that she sat up and told the nurse to "get her damn hands off of me" and to get out of the room. Morgan testified that after that request was made, the nurses left.

¶22. In sum, Morgan tries to ignore the fact that not only she did consent to treatment at the Hospital, but she failed to present any evidence that anyone intentionally tried to harm her. Moreover, she presented no evidence that the alleged touching was not a necessary part of her treatment for her mental illness. Touching and handling patients is a necessary part of the patient's treatment, and Hospitals should not be punished for simply carrying out their duties in handling patients in an effort to treat them. Morgan failed to prove the requisite elements of assault and battery, and the trial court was correct in granting a directed verdict on these causes of actions.

## C. Intentional Infliction of Emotional Distress and Gross Negligence

¶23. The trial court also refused to allow the jury the consider punitive damages, thus, taking from Morgan her claims for intentional infliction of emotional distress and gross negligence. This Court has been clear in holding that a plaintiff asserting a claim for mental anguish, whether as a result of simple negligence or an intentional tort, must always prove that the emotional distress was a reasonably foreseeable result of the defendant's conduct. ***Adams v. U.S. Homecrafters, Inc.***, 744 So.2d 736, 742 (Miss. 1999). In cases of intentional infliction of emotional distress, where the defendant's conduct was "malicious, intentional or outrageous," the plaintiff need present no further proof of physical injury. ***Id.***

¶24. Morgan failed to present evidence that the defendants acted maliciously, intentionally, or outrageously. Nor has she demonstrated any proof that the defendants could have reasonably foreseen that their actions

would cause Morgan emotional distress. Indeed, the jury found that there was not even enough evidence to prove simple negligence. As previously stated, Morgan merely said that a nurse rolled her over on her bed, and the nurse grabbed the pocket of her pants while trying to search Morgan in the seclusion room. With this meager evidence, Morgan has simply not shown the requisite intent or gross negligence conduct required before damages can be assessed for intentional infliction of emotional distress. As the appellees aptly state in their brief, "[i]t's not enough that plaintiff did not like the actions taken by the Hospital staff, but she must show that the staff intentionally and maliciously sought to harm her. Morgan did not do that." Thus, the trial court did not err in directing a verdict for the defendants on Morgan's gross negligence and intentional infliction of emotional distress claims.

## II.

¶25. On October 29, 1999, Morgan filed a motion for emergency continuance due to the unavailability of Billie Williams, an eyewitness. Like the other eyewitness, Nancy Mosal, Billie Williams would have testified that she was sitting in the day room when Morgan requested the peroxide from the nurses, and that she saw and heard the whole incident that is the subject of this case. The trial court denied the continuance on November 1, 1999, on the morning before the trial began. Morgan asserts that she was substantially prejudiced by the unavailability of Billie Williams.

¶26. "The granting of a continuance is largely a matter within the sound discretion of the trial court and unless manifest injustice appears to have resulted from a denial, this Court should not reverse." *Thomas v. Hilburn*, 654 So.2d 898, 904 (Miss. 1995) (quoting *Hatcher v. Fleeman*, 617 So.2d 634, 639 (Miss. 1993)). This Court has further held that the trial court may exercise "reasonable latitude" in the setting and continuance of cases. *Thomas*, 654 So.2d at 904 (citing *Watts v. Pennington*, 598 So.2d 1308, 1312 (Miss. 1992)).

¶27. There is nothing to substantiate Morgan's argument that she suffered any injustice from the trial judge's denial of her motion for continuance. This case was filed October 24, 1996, approximately three years before it finally went to trial. Morgan had every opportunity to secure the testimony of Billie Williams prior to trial. It was Morgan's conscious decision not to take the deposition of Williams and not to issue a subpoena to her until the eve of trial.

¶28. There being no showing that Morgan suffered any injustice from the trial court judge's denial of her motion for continuance, this Court finds no abuse of discretion.

## CONCLUSION

¶29. In sum, the trial court did not err in granting a directed verdict on the issues of assault and battery, false imprisonment, gross negligence and intentional infliction of emotional distress. Genia A. Morgan simply failed to meet her burden of proof in showing the necessary elements of these causes of action. Likewise, there was no error by the trial court in denying Morgan a continuance in order to procure the testimony of a potential eyewitness, Billie Williams. Morgan presented the testimony of another eyewitness and offered Morgan's version of the facts. She failed to show that the trial judge abused his discretion in denying her motion for continuance on the eve of trial. For these reasons, we affirm the judgment of the Hinds County Circuit Court.

¶30. **AFFIRMED.**

**PITTMAN, C.J., BANKS, P.J., MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR.McRAE, P.J., CONCURS IN RESULT ONLY. EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**