STATE, USE OF POWELL *v.* MOORE, et al.

No. 43487          April 12, 1965          174 So. 2d 352

*Adams, Long & Adams,* Tupelo, for appellant.

*James E. Bost,* Pontotoc, for appellees.

ETHRIDGE, J.

This suit seeking damages for false imprisonment involves the question of whether the evidence warranted a jury finding that there was no detention or restraint of the person of appellant, James Truitt Powell, Sr., but simply a voluntary trip to police headquarters for further identification. We conclude this was a jury issue, and finding no reversible errors affirm the judgment of the Circuit Court of Pontotoc County.

Powell brought this suit against Moore, the sheriff, his deputy, Talmadge D. Witt, and the surety company on the sheriff's bond. On this review of the jury's verdict, we accept as true the evidence favorable to appellees and reasonable inferences from it.

On the night in question Deputy Sheritt Witt received on the two-way police radio in Pontotoc an inquiry from nearby Monroe County of whether he knew a Jimmy or James Powell. They were looking for this person on a charge of pointing, aiming and discharging a gun. The requesting operator stated this would be a felony, and that a warrant had been issued. In fact the offense charged is a misdemeanor, unless the discharge of the gun hits another person. Miss. Code Ann. § 2013 (1956). Witt replied that he thought it was the wrong man, but that he would talk to appellant and ''get him up here and hold him until you can come and look at him.'' Witt inquired at plaintiff's home, and was advised that he was working at another house. Someone called plaintiff, telling him that Witt was looking for him, so when the deputy arrived, Powell came out to meet him on the sidewalk. Witt said he thought there had been a mistake, but if Powell would go to the city hall with him, he would call Monroe County and get it straightened out. Powell then got in the car and they drove to the city hall, from where Witt located the Monroe County sheriff, who said he would drive to Pontotoc in the next 40 minutes. Waiting for him, appellant and others drank coffee and sat around and talked.

Witt told Powell twice that he was not under arrest, but that this was the only way he knew to straighten the matter out. He never said he was under arrest. Powell's attitude was pleasant. They arrived at the city hall at 7:15, and Powell left around 8:30, after about an hour and fifteen minutes. While waiting, Powell got Witt to call the lady for whom he was working, and tell her ''everything was all right.'' Witt stated that Powell was not arrested, and he went to the city hall without any objections. His testimony was supported in various respects by a mail carrier who was riding in the deputy sheriff's car, two radio operators, the lady for whom Powell was working, and another deputy sheriff. When

the Monroe County sheriff arrived and saw plaintiff, he told Witt that this was not the man. Plaintiff was returned to his residence in the sheriff's car.

On the other hand, Powell's evidence was to the effect that when he first saw Witt, the latter told him to get in his car, that "he had an order to carry me down to the city hall," on a charge of pointing and aiming a deadly weapon. Powell said he suggested that he follow in his own automobile, but Witt told him he could not, that he should get in the deputy's car; and that they kept him at the city hall for two hours or perhaps longer. He admitted he is known by many people as "Jimmy Powell." Witt did not touch him. Powell did not offer any resistance, because, he said, Witt had a gun in a holster. He denied that Witt told him at the city hall that he was not under arrest. Plaintiff's father and three other witnesses supported in several respects his version of what happened.

■■■ The two elements of an action for false imprisonment are (1) the detention of the person, and (2) the unlawfulness of such detention. 35 C.J.S., *False Imprisonment* § 5 (1960). Since "Jimmie Powell" was charged with a misdemeanor, Witt had no authority to arrest plaintiff. However, that issue is not reached if the jury was warranted in finding that there was no arrest, detention and restraint of Powell, but a voluntary trip to the city hall with the deputy sheriff for the purpose of clearing up the identification. We think this was an issue for the jury, which found against appellant. It apparently concluded that there was no intent to restrain Powell or to arrest him, that there was no detention of him, that Powell voluntarily went with the deputy sheriff to the city hall to clear up the mistake about identification of one "Jimmie Powell," charged with an offense in Monroe County. *Id.*, § 8.

■■ A person is not liable for false imprisonment unless his act is done for the purpose of imposing

a confinement. In cases in which there is no manual touching or seizure or any resistance, "the intentions of the parties to the transaction are very important. There must have been an intention on the part of one to arrest the other and an intention on the part of such other to submit under the belief and impression that submission was necessary." 22 Am. Jur. *False Imprisonment* § 7 (1939). The restraint must be involuntary, and where it is not against the will of the plaintiff, there is no imprisonment. *Id.*, § 8.

Williamson v. Wilcox, 63 Miss. 335 (1885), a suit for false imprisonment, held that "one cannot maintain a suit when he has consented to the act which produced the injury." In Vice v. Holley, 88 Miss. 572, 41 So. 7 (1906), reversing and remanding a suit for false imprisonment, it was said that if plaintiff "voluntarily went to the police station" and submitted himself to being locked up, "without any compulsion being used, either actual or constructive, knowing at the time his right to refuse," then the defendant was not liable, "but it was for the jury to pass on the facts, and to say whether or not this was the case."

Darlow v. New York, 207 Misc. 124, 137 N.Y. Supp. 2d 69 (1955), held that where the state police received a teletype message advising that an individual, by name and by alias, was wanted on a warrant for grand larceny, they had the right to request him to accompany them to the police barracks for further identification. The court said that Darlow "fully and voluntarily cooperated with the state police, and there is nothing in the stipulation to indicate that he made any protest." There was no arrest, but a voluntary accompanying of the police officers for further identification.

In Bass v. Dunbar House Inc., 161 A.2d 50 (Mun. Ct. App., D.C., 1960), plaintiff's suit for false imprisonment was dismissed. He was a night clerk in a hotel, where a money shortage was discovered. He was re-

quested to appear at the hotel and was questioned by the police. At conclusion of this conference, plaintiff stated the officers said "Let's go to headquarters," where he was questioned further and returned home. The court held that he was not arrested when the police requested that he go to headquarters for questioning. Plaintiff went willingly and without protest, was not taken into custody, and was under no warrant "or other form of compulsion when he went to police headquarters."

The court rendered a summary judgment for defendant in Pollack v. City of Newark, N.J., 147 F. Supp. 35 (U.S.D.C., N.J., 1956), where plaintiff sued the city and police officials for alleged violation of his rights under the Civil Rights Act. Plaintiff was distributing circulars and soliciting contributions. A patrolman told him he needed a permit, and to apply at police headquarters for one. Plaintiff went there, and while waiting the officers made inquiries in his home town and with other police authorities, getting information about him. Plaintiff insisted he was placed under arrest. That was his "impression." It was held that detention is not synonymous with arrest. It must be without consent and without legal cause to constitute false arrest. Plaintiff visited headquarters voluntarily, was free to leave at will, the doors were open and people were coming and going.

"The presence of a policeman who questions the plaintiff, or the bare assertion that authority to arrest exists in the defendant, without purporting to exercise it by taking the plaintiff into custody, is not imprisonment, so long as no present restraint of liberty is to be implied. Also, there is no false imprisonment unless the defendant intends to cause a confinement. . . . There was an absence of words or conduct which would induce a reasonable apprehension of force directed to the plaintiff. . . . And where it is clear that

there is no reasonable apprehension of force, there is no issue to go to a jury on the question of false arrest.

147 F. Supp. at 39.

Prosser, The Law of Torts section 12 (3d ed. 1964) states:

False imprisonment is the confinement of the plaintiff within boundaries fixed by the defendant, without legal justification, by an act or the breach of a duty in tended to result in such confinement.

The action for the tort of false imprisonment protects the interest in freedom from restraint of movement:

It is essential, however, that the restraint be against the plaintiff's will; if he agrees of his own choice to surrender his freedom of motion, as by accompanying the defendant voluntarily to clear himself of an accusation, rather than yielding to the constraint of a threat, there is no imprisonment.

Prosser, *id.* at 49; see Chrestman v. State, 148 Miss. 673, 114 So. 748 (1927); 1 Restatement of Torts §§ 35-45 (1934).

■■ In the instant case and under the above authorities, the evidence warranted the jury in finding that there was no confinement or detention of Powell, but that he went willingly and without protest to the city hall with the deputy sheriff in order to clear up the error of identification. This issue of fact is rather close, but we think the jury could find as it did.

■■ The capias from the Circuit Clerk of Monroe County for the arrest of ''Jimmie Powell'' should not have been admitted in evidence, but it was not reversible error to do so, because it was cumulative in reflecting an undisputed fact, that a person with that name was sought for a misdemeanor. Witt's testimony about receiving the radio request for ''Jimmy Powell,'' and his reply of doubt about appellant being the right man,

was properly admitted, since it was relevant on Witt's intent and purpose.

Considering the instructions as a whole, we think they adequately submitted to the jury the key issue in the case, whether Witt arrested or detained Powell. The burden of proof to establish such arrest or detention was on plaintiff, so defendants' Instructions 3 (on the burden of proof) and 6 (on preponderance of the evidence) were properly given. Appellant's instructions amply presented the issue. The trial court perhaps should have given appellant's requested Instruction 3A, but this was not reversible error, because other instructions granted appellant covered substantially the same ground. Since the jury found there was no detention or arrest, the right to arrest becomes immaterial.

Affirmed.