Aubrey L. HART and Judy D. Hart, Plaintiffs-Appellees Cross-Appellants,

v.

Dudley WALKER, Defendant-Appellant Cross-Appellee.

No. 82–4016.

United States Court of Appeals, Fifth Circuit.

Dec. 16, 1983.

Christian T. Goeldner, Southaven, Miss., for defendant-appellant cross-appellee.

Grady F. Tollison, Jr., S. Allan Alexander, Oxford, Miss., for plaintiffs-appellees cross-appellants.

Before BROWN, REAVLEY and RANDALL, Circuit Judges.

**1438**

RANDALL, Circuit Judge:

This case arises out of the actions of the defendant, Dudley Walker, in causing the removal of culverts from the plaintiffs' property. The plaintiffs, Aubrey and Judy Hart, brought suit against Walker both in his individual capacity and, because he is a County Supervisor of Marshall County, Mississippi (the "County"), in his official capacity. After a bench trial, the district court found for the Harts on all counts and awarded them compensatory and punitive damages, and attorneys' fees. Walker now appeals the judgment against him and the Harts cross-appeal the amount of the attorneys' fee award. For the reasons set forth below, we affirm.

Subsequent to the entry of judgment in this case, and after a show-cause hearing, the court ordered Marshall County to pay the judgment, including costs and attorneys' fees. In a related case, *Hart v. Walker v. Marshall County, Mississippi,* 720 F.2d 1443, also decided this day, the County has appealed the imposition against it of the judgment, costs, and attorneys' fees.

I. FACTUAL AND PROCEDURAL BACKGROUND.

On March 18, 1980, the Harts contracted to purchase a lot in the Quinn Road Estates Subdivision, located in District No. 3 of Marshall County, Mississippi. The lot fronted upon an east-west public gravel road which had traditionally been maintained by the County. This road connected with the north-south Quinn Road, also an established public road. Driveways within the subdivision were laid out at the time the plat was filed and approved by the County authorities. The Harts intended to build a residence on the lot.

The Harts contacted the defendant, Dudley Walker, county supervisor of District No. 3, to inquire about securing proper culverts to establish a driveway on the lot. Walker refused to assist the plaintiffs because, in his opinion, the subdivision roads were "condemned," the entire subdivision was illegal, and the Harts had no right to make any improvements or to do anything

to gain access to the public road. When the Harts met with Walker, he told them: "If you put a culvert in that ditch on that county road, I will tear it out."

On or about April 21, 1980, Mr. Hart obtained and installed culverts. Walker subsequently observed that the culverts had been installed and announced his intention to have them removed. When the Harts learned of Walker's intent to tear out the culverts, they planned to take pictures of any action that he might take.

On April 22, Walker approached the Still Store, where the Harts and some of their family were gathered. Walker stopped his pickup truck, reached inside the vehicle and obtained a .38 revolver in a holster, and clipped the holster onto his belt. There was conflict in the testimony at trial as to what happened next. The Harts stated that Walker put his right hand on the pistol, looked directly at Aubrey Hart, and said, "You are under arrest." Walker denies that he touched the gun and claims that he said, "I am going to tear out that culvert and if you give me any trouble, I am going to put you under arrest. I am going to have you arrested and taken to jail." The district court believed the Harts' version of what was said, as well as Mrs. Hart's statement that Walker flashed what looked like a badge when he was asked what authority he had to make an arrest. The court found that this confrontation placed the Harts in fear of bodily harm.

Walker subsequently walked across the road and had the culverts removed, while the Harts took photographs. No mention was made about any defects in the culverts. When Aubrey Hart asked if he was still under arrest after removal of the culverts, Walker informed him that he was free to leave. The court found that until that point, Hart "reasonably believed that he was subject to the will and wish of Walker." Record Vol. II at 194.

The Harts filed the instant action against Walker, in his individual and official capacity as a board supervisor, claiming jurisdic-

tion under 28 U.S.C. § 1332 (1976)[1] and 28 U.S.C. § 1343 (1976).[2] The district court found that Walker had falsely arrested and committed an assault against the Harts, that he had deprived them of a property right under state law, and that he had deprived them, without due process, of their constitutionally-protected rights to enjoyment of their property and to be free of unwarranted arrest, in violation of 42 U.S.C. § 1983 (1976).[3] The court found further that Walker's actions were not taken in good faith, thus negating his asserted defense of qualified immunity.

The court awarded $7500 in compensatory damages to the Harts for injury to their property, humiliation, anxiety, and other emotional distress. The court also awarded $7500 in punitive damages because it found that Walker's actions had been "not only willful but malicious and in reckless disregard of the rights of plaintiffs . . . ." After the Harts submitted affidavits in support of their motion for attorneys' fees, the court awarded them $10,500 in attorneys' fees, representing compensation for 140 hours of time at an hourly rate of $75. The court disallowed 20.1 hours of attorney time that it considered to be duplicative.

## II. PENDENT STATE LAW CLAIMS.

### A. Personal Torts.

Under Mississippi law, the elements of false arrest or imprisonment are two-fold: (1) the detention of a person; and (2) the unlawfulness of the detention. *See, e.g., Powell v. Moore,* 252 Miss. 471, 174 So.2d 352, 354 (1965). Where there is no manual touching or seizure of the person, there must be " 'an intention on the part of one to arrest the other and an intention on the part of such other to submit under the belief and impression that submission was necessary.' " *Id.* (quoting 22 Am.Jur. *False Imprisonment* § 7 (1939)). *See also Martin v. Santora,* 199 So.2d 63, 65 (Miss.1967) ("where no force or violence is actually employed, the submission of the plaintiff must be to a reasonably apprehended force").

We think it is clear that the district court did not err in concluding that the *Powell* elements were met in this case. There was ample evidence adduced at trial from which the district court could properly determine that Aubrey Hart reasonably believed himself to be under arrest. Likewise, the court's findings that Walker displayed a weapon, told Hart that he was under arrest, and showed the Harts an object they believed to be a badge, are all supported by the record. Moreover, the detention effected by Walker was unlawful, because neither a peace officer nor a private individual may make an arrest without a warrant unless a misdemeanor has been committed in his presence or unless he suspects that a felony has been committed. *See Smith v. State,* 229 So.2d 551, 556 (Miss. 1970). Neither circumstance was present in this case. Thus, the district court's finding of false arrest was not clearly erroneous.

1. Section 1332 provides federal jurisdiction in diversity cases. The Harts are residents of Tennessee; Walker is a Mississippi resident; the amount in controversy is more than $10,-000.

2. Section 1343(3) is the jurisdictional counterpart of 42 U.S.C. § 1983 (1976). *See, e.g., Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972). Section 1343 provides:

   The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

   \* \* \* \* \* \*

   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . .

3. Section 1983 provides:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ The court also found that Walker had assaulted the Harts. Again, we do not consider this determination to be clearly erroneous. The parties agree that assault is "an intentional placing of another in reasonable apprehension of receiving an immediate battery." Perkins, *Criminal Law* § 2 (2d ed. 1969). Mere words, without the threat of physical violence, are insufficient. *See Nowell v. Henry,* 194 Miss. 310, 12 So.2d 540 (1943). The Mississippi courts have characterized criminal assault as "an infringement upon the right to a sense of personal security ... defined subjectively in terms of a reasonable apprehension engendered in the victim by hostile threat or gesture." *Cittadino v. State,* 199 Miss. 235, 24 So.2d 93, 95 (1945). The "exhibition [of a gun] ... accompanied by an expression of vexed discontent [is] a sufficient gesture to support a charge of simple [criminal] assault." *Edgar v. State,* 202 Miss. 505, 32 So.2d 441, 442 (1947). We find no indication in Mississippi law that the standard for civil assault is different.

■ In the instant case, there was testimony that Walker put his hand on his gun. Moreover, he clearly expressed his "vexed discontent" to the Harts. The district court, therefore, properly concluded that the Harts' well-founded fear of imminent peril, coupled with Walker's ability to effectuate such peril, constituted assault by Walker.

#### B. Interference With a Property Right.

■ The district court noted that under Mississippi law, an owner of property that abuts a public road acquires a special easement for the right of ingress and egress to and from his own property to the adjoining public road. *See Morris v. Covington County,* 118 Miss. 875, 80 So. 337 (1919) (compensation due in eminent domain proceeding). The district court found that Walker's removal of the culverts had interfered with the Harts' attempt to gain access to the public road.

Walker alleged at trial, and alleges in this appeal, that he removed the culverts because they were defective and improperly installed. The district court found, however, that Walker had not offered this justification to the Harts before he removed their property. The record supports this finding.

Walker also contends that he had the authority and duty to remove the culverts in his capacity as a board supervisor. Miss. Code Ann. § 65–7–7 (1982 Supp.) provides:

> If any person shall fell any bush or tree and leave any portion thereof in any stream or on any public highway, road, or ditch draining the roadway or obstruct the same in any manner whatever, and not immediately remove the obstruction, the overseer of the road shall remove the same, and the person so felling the tree or bush, or otherwise obstructing the road or water shall forfeit and pay all expenses of removing the same, to be recovered before any justice of the peace of the county, in the name of the county. It is the duty of the overseer to cause suit to be commenced therefor, and such person shall be liable for all damages occasioned to another by the obstruction.

\*   \*   \*   \*   \*   \*

This provision is inapposite, however, in the present case. Walker did not remove a bush or tree, and it is not clear that the Harts' culverts were an obstruction to the ditch. Moreover, Walker did not give the Harts an opportunity to "immediately remove" the culverts, but refused even to tell them the basis for his objection. Under these circumstances, the district court did not err in concluding that Walker's removal of the culverts from the Harts' property was tortious.

### III.  SECTION 1983 CLAIM.

■ Walker asserts that his actions did not deprive the Harts of their constitutionally-protected right to enjoyment of their property,[4] because one is not always entitled to notice or a hearing prior to a depri-

---

4. Walker does not challenge the district court's determination that his unlawful arrest of the

Harts itself constituted a deprivation of due process in violation of section 1983.

vation of property by an official.[5] As authority for this proposition, Walker refers us to *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), in which the Supreme Court indicated that although in general a hearing is required prior to attachment or seizure of private property by the state, in certain emergency situations the requirement may be inapplicable. Walker maintains that immediate removal of the culverts was mandated because rain and possible flooding were imminent. The Harts contest this claimed sense of impending emergency. In any case, it is clear that even after the so-called emergency had passed, Walker did not commence the suit against the Harts required by Miss.Code Ann. § 65–7–7, *supra.* Under these circumstances, the suggestion in *Fuentes* that property may be taken in emergency situations, without prior notice or a hearing, will not save the day for Walker, who failed to institute the post-deprivation proceeding mandated by state law. *See also North Georgia Finishing Co. v. Di-Chem,* 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

Walker also maintains that he should not be held liable for violations of section 1983 because he was entitled to a defense of qualified, or good faith, immunity. He contends that he had wide discretionary power over the county roads and that he should, therefore, be accorded the same qualified immunity as other officials who exercise discretion. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Douthit v. Jones,* 619 F.2d 527 (5th Cir.1980).

Even assuming, *arguendo,* that a road supervisor is entitled to the qualified immu-

nity afforded a presidential advisor, *see Harlow, supra,* or a jailer, *see Douthit, supra,* this argument is without merit. The district court, in addition to finding that Walker's actions were not undertaken in good faith, also found, in effect, that Walker's conduct violated constitutional rights of the Harts of which a reasonable person would have known. This finding suffices to satisfy the standard set forth in *Harlow, supra,* 102 S.Ct. at 2738. Walker knew, or should have known, that he did not have probable cause to arrest Hart. Further, he knew or should have known that his unilateral destruction of the Harts' culverts and the consequent denial of access to their property constituted a deprivation of property rights without due process of law. Thus, the district court's finding that Walker was not entitled to qualified immunity is correct.

## IV. DAMAGES.

Walker complains that the district court's award of $7500 in compensatory damages was excessive and that the Harts' actual damages were nominal. We note initially that a trial court is afforded wide latitude in awarding damages, and its decision will not be set aside unless the award is clearly inappropriate. *Drake v. E.I. DuPont NeMours and Co.,* 432 F.2d 276, 279 (5th Cir.1970). While the parties seem to agree that the culverts themselves were of nominal value, the district court's award of $7500 included compensation for deprivation of the enjoyment of their property and emotional distress, as well as for the destruction of the culverts. The court noted that the incident resulted in significant publicity in the community and that the Harts were humiliated as a result. To the extent that the Harts proved some of these

---

**5.** In his original brief Walker conceded that his actions were taken under color of state law. He asked to submit a supplemental reply brief because he had obtained new counsel and because he claimed that the Supreme Court's intervening decision in *Harlow v. Fitzgerald, infra,* had changed the law. In his third appellate brief, Walker has attempted to withdraw his concession concerning "state action." The Harts rightfully claim that this attempted with-

drawal goes beyond this circuit's authorization of a third brief. *See Stanley Educational Methods, Inc. v. Becker C.P.A. Review Course, Inc.,* 539 F.2d 393, 394 (5th Cir.1976). Further, Walker has maintained throughout these proceedings that his actions were taken in his official capacity as a board supervisor, thereby admitting that his actions were taken under color of state law.

damages, therefore, the award was not excessive.

■ Punitive damages are allowable under Mississippi law where a defendant's conduct is wanton, gross, or intentionally wrongful. *See State Farm Mutual Auto. Insurance Co. v. Roberts,* 379 So.2d 321 (Miss.1980). Punitive damages may be recovered where there is malice, fraud, oppression, willful wrong, or gross negligence. *Woodall v. Ross,* 317 So.2d 892 (Miss.1975). Walker contends, relying heavily on his argument that his actions were taken in the performance of his official duty, that his actions did not meet the wantonness standard. The district court, however, found to the contrary, opining that Walker's actions were indeed oppressive and taken in reckless disregard of the law. The record supports this finding; thus, the award of punitive damages was appropriate. We note as well that although the district court's award of punitive damages appears to have been based on the Harts' state law claims, such an award is also appropriate, under these circumstances, with regard to the Harts' section 1983 action. *See Smith v. Wade,* —— U.S. ——, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (punitive damages available under section 1983 where conduct involves reckless or callous disregard of federally protected rights).

V. ATTORNEYS' FEES.

■ Under 42 U.S.C. § 1988 (1976), a prevailing party in an action brought under section 1983 may be awarded "reasonable" attorneys' fees. *See also Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). In the case at hand, it is clear that the Harts prevailed in their action, and an award of fees was proper. The Harts object, however, to the trial judge's refusal to compensate them for the presence of a second attorney at depositions and various proceedings. We note that a trial judge's award of attorneys' fees under section 1988 will not be disturbed unless the judge has abused his discretion. *B.A.W. Manufacturing Co. v. Slaks Fifth Avenue Ltd.,* 547 F.2d 928 (5th Cir.1977); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The trial judge did not think that this case was particularly complex and concluded that "the services of no more than a single attorney were reasonably necessary in order to litigate this case to a successful conclusion for the plaintiffs."

■ In *Johnson, supra,* we expressly urged trial courts to examine whether there has been duplication of effort where more than one attorney is involved in a case. 488 F.2d at 717. The trial judge's conclusion in this case that the presence of more than one attorney was unnecessary was not an abuse of discretion in light of the fact that the case involved relatively simple issues of fact and law. That Walker also had two attorneys does not undermine the trial judge's conclusion since the judge might well have found Walker's second attorney unnecessary had Walker prevailed.

■ The Harts also contend that their attorneys should have been compensated at an hourly rate higher than $75 because the case was taken on a contingency basis and the trial court specifically found that the case was an undesirable one. However, a trial court is not required to enhance an award in light of the contingent nature of the case; the court need only *consider* the fact that a case was taken on a contingent basis. *See Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.1981); *Schneider v. City of Atlanta,* 628 F.2d 915, 920 (5th Cir.1980). The trial court did consider both the contingent nature and the undesirability of this case in deciding to make the award on the basis of an hourly rate of $75, which affidavits submitted on behalf of the Harts' attorneys established was at the upper range of the customary pay scale for such cases ($60 to $75 an hour). *See* Record Vol. I at 146–47. We conclude that the hourly rate assessed by the district court was appropriate.

AFFIRMED.