**Isaac E. DAVIS, III, Plaintiff,**

v.

**Wallace E. MANN, et al., Defendants.**

**Civ. A. No. J86–0721(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

March 23, 1988.

Michael B. Wallace and Walker W. Jones, III, Phelps, Dunbar, Marks, Claverie & Sims, Jackson, Miss., for plaintiff.

Ed Davis Noble, Jr., Staff Attorney's Office, University of Mississippi Medical Center, and Rickey T. Moore, Sp. Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION

TOM S. LEE, District Judge.

This cause is before the court on the motion of the plaintiff for partial summary judgment and the cross-motion of the defendants for summary judgment. By order of April 17, 1987, this court denied the parties' motions. Following a conference with counsel and a clarification of the parties' respective positions regarding certain factual issues, the court at the parties' request agreed to reconsider the motions. Having considered the memoranda with attachments submitted by the parties, the court is of the opinion that defendants' motion for summary judgment should be granted in part.

All at times relevant to this cause of action, plaintiff, Dr. Isaac E. Davis, III, was a student in the General Practice Residency Program at the University of Mississippi School of Dentistry. Pursuant to a written employment contract, plaintiff received a salary for the work he performed in connection with the residency program. Davis was dismissed from the program effective April 30, 1986. He continued to receive his salary pursuant to the employment contract, and eventually was paid the entire amount provided for in the contract. Plaintiff filed suit against Dr. Wallace E. Mann, Dean of the University of Mississippi School of Dentistry, individually and in his official capacity, and the members of the Board of Trustees of State Institutions of Higher Learning in their official capacities. He alleges that his dismissal from the General Practice Residency Program violated his federal constitutional rights to due process and free speech; he also asserts claims under state law for breach of contract and denial of due process. Plaintiff has moved for summary judgment on

the due process claims. Defendants seek summary judgment on all claims.

## DUE PROCESS

■ Plaintiff alleges that he was deprived of his employment and his participation in the educational program provided by the dental school without being afforded the procedural safeguards mandated by the due process clause of the fourteenth amendment. Plaintiff is entitled to the protections of the due process clause only if he has a property interest[1] in his continued employment or education. *See Goss v. Lopez*, 419 U.S. 565, 573–74, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Assuming that Davis had a property interest in his employment, he nevertheless has failed to show a deprivation of that interest. The due process rights afforded to persons facing termination of their employment appear to be based on the "substantial private interest one has in not being deprived of his livelihood." *Schaper v. City of Huntsville*, 813 F.2d 709, 716 (5th Cir.1987); *see also Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 543, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). Since Davis received all his salary under the contract and had no expectation of continued employment after the termination date of the contract, he was not deprived of his livelihood. Therefore, he was not deprived of "property" within the meaning of the fourteenth amendment's due process clause, and the propriety of the substantive or procedural aspect of his discharge is irrelevant. *See Robinson v. Boyer*, 825 F.2d 64, 67 (5th Cir.1987) (no claim under due process clause where plaintiff was fully compensated under his contract).

Plaintiff nevertheless contends that, despite his having received all his salary, he was still denied the "benefits" of his job, namely, "the educational program to which he was entitled under his contract." Plaintiff would thus remove his dismissal as a student from the less stringent due process standards applicable to academic dismissals and place it under the more demanding procedural requirements associated with employment terminations. *Compare Loudermill*, 470 U.S. at 545–48, 105 S.Ct. at 1495–96 (employment termination), *with Board of Curators v. Horowitz*, 435 U.S. 78, 85–90, 98 S.Ct. 948, 952–55, 55 L.Ed.2d 124 (1978) (academic dismissal). In the court's opinion, however, the reference in the contract to the provision of an educational program bears only on whether or not Davis had a property interest in that educational program, and not on what procedural safeguards were required in connection with its termination. If such a property interest existed, then the student-dismissal due process standards are applicable, regardless of whether the property interest arose from a contract or from some other source.[2] Consequently, the court concludes that it is not proper to review plaintiff's dismissal from the General Practice Residency Program under the standards applicable to employment terminations.

The United States Supreme Court has declined to decide whether a college student has a property interest in the educational program in which he is enrolled.[3] *See Regents of University of Michigan v. Ewing*, 474 U.S. 214, 222–23, 106 S.Ct. 507, 511–12, 88 L.Ed.2d 523 (1985). It is not necessary for this court to decide if the contract provision cited by Davis gave him a property interest in the residency pro-

---

1. Liberty interests are also protected from infringement without due process. Davis, however, does not allege a deprivation of liberty.

2. The source of a property interest may be a statute, ordinance, rule, or mutually explicit understanding. *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Conley v. Board of Trustees*, 707 F.2d 175, 179 (5th Cir.1983).

3. The Court has held that a property interest in public elementary and secondary education was created by state laws providing for free education to all residents of school age. *See Goss v. Lopez*, 419 U.S. 565, 573–74, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975). However, since there is no state law entitlement to postsecondary education, it would not necessarily follow from the Court's ruling in *Goss* that college students also have a property interest in their enrollment.

gram. Assuming, as the Supreme Court did in *Ewing*, that plaintiff's dismissal infringed a protected property interest, this court is of the opinion that plaintiff was afforded at least as much procedural protection as the fourteenth amendment requires.

Davis was dismissed from the General Practice Residency Program for deficient academic performance. In *Horowitz*, the Court held that the fourteenth amendment's mandate was met in connection with an academic dismissal where the student was fully informed of the faculty's dissatisfaction with her academic performance and apprised of a consequent threat to continued enrollment, and where the decision to dismiss the student was careful and deliberate. *Horowitz*, 435 U.S. at 85, 98 S.Ct. at 952. The Court held that a hearing was not required. *Id.* at 87 n. 3, 90, 98 S.Ct. at 953 n. 3, 955. It is undisputed that Davis was counselled on more than one occasion over a period of several months about deficiencies in his performance and was eventually given thirty days to improve his performance in order to foreclose further action, which might include dismissal. Thus plaintiff was fully informed of the perceived deficiencies in his performance and warned of the potential consequences to his continued participation in the program.

It is also uncontroverted that plaintiff's performance was reviewed on two occasions by a faculty committee which, following the second review, and after Davis had received a probationary admonition, recommended that he be dismissed from the program. Following this recommendation by the faculty committee, defendant Mann made the decision to dismiss Davis. In the court's opinion, these steps satisfied the requirement that the ultimate decision to dismiss plaintiff be careful and deliberate.

The school, however, went beyond this and granted Davis a hearing—which is not required by *Horowitz*—before an ad hoc committee from the medical center. Plaintiff was notified of the complaints against him and provided the names of the witnesses who would testify against him. He was also allowed to have the assistance of counsel, to testify and present witnesses on his behalf and to cross-examine the witnesses against him. The committee made an independent consideration of plaintiff's performance as a student and recommended that he be dismissed, whereupon Mann reaffirmed his decision to dismiss Davis. Davis was permitted to appeal Mann's decision to the Chancellor of the University, who upheld Mann's decision. The procedural safeguards provided to Davis far exceeded those imposed by the fourteenth amendment for an academic dismissal. Even if, as plaintiff contends, the hearing process had certain defects, these faults did not constitute a denial of due process where no hearing at all was required.

Davis maintains that even if this is treated as a student dismissal rather than an employee discharge, it was a disciplinary rather than an academic dismissal. He contends that the complaints lodged against him charged instances of personal misconduct rather than academic shortcomings. It is the court's opinion, however, that the reasons for plaintiff's dismissal are correctly characterized as academic. The deficiencies which were noted consisted of such things as wrong chart numbering of teeth, failure to diagnose periodontal disease, failure to develop treatment plans, prescribing penicillin when the patient said she was allergic to the drug, failure to conduct a periodontal exam, failure to explain alternative treatments to a patient, failure to get a consent form signed before performing a procedure, leaving a patient while the patient was being administered nitrous oxide, failure to obtain a consultation before performing oral surgery, drilling on teeth without first making x-rays and treating a patient on a screening visit. In the court's opinion, these were properly treated by the faculty as academic failures, especially since the program was a clinical one and these alleged shortcomings amounted to deficiencies in plaintiff's clinical performance. *See Horowitz*, 435 U.S. at 81, 98 S.Ct. at 950. Other deficiencies, such as absences, tardiness and failure to keep adequate records of diagnosis and treatment and to document such matters as antibiotic coverage, health history and

physical assessment, are also accurately labeled as academic deficiencies.[4]

Because this was an academic rather than a disciplinary dismissal, no hearing was required. *Id.* at 90, 98 S.Ct. at 955. But even if a hearing were constitutionally required under the circumstances, the court is of the opinion that the hearing which Davis was given satisfied the requirements of the due process clause.

Plaintiff complains that he was denied due process because the witnesses against him at the hearing were not sworn to tell the truth. This position is unsupported by authority and in the court's view is without merit.

Davis also alleges a denial of due process in that the ad hoc committee did not make specific findings of guilt regarding any of the charges, but found him guilty of unspecified academic deficiencies and recommended his dismissal. The court first notes that at the hearing Davis admitted most of the actions or omissions with which he was charged. Furthermore, implicit in the committee's recommendation of dismissal is a determination that Davis was guilty of a substantial enough number of the charges to warrant his being dismissed as a student. Since it is not the business of this court to second-guess the administration of the dental school as to how many specific instances of misconduct warrant expulsion from the program, the committee was under no constitutional obligation to make specific findings with reference to each allegation. The purpose of a hearing is to give the student an opportunity to present a defense to the charges and to argue against whatever disciplinary action is contemplated. Neither of these purposes is frustrated by a failure to make specific findings of guilt or innocence. The substantive findings and conclusions of the hearing committee, if they are properly reviewed by a court at all, are subject only to an examination for arbitrariness. The record is clear that there are adequate grounds for the committee's recommendation to withstand a charge of capricious action, with or without a specific resolution of the individual charges against Davis.[5]

Plaintiff also complains of the apparent failure of the ad hoc committee to consider his claim that his discharge was in retaliation for his criticism of the residency program. However, it is clear that the committee's purpose was to make an independent evaluation of Davis' performance as a student and a determination of whether in light of his conduct he should be permitted to continue as a student. Given this role for the committee, it was permissible, indeed proper, that the committee not consider matters extraneous to the immediate purpose, such as whether the charges against Davis resulted from improper motives. The motivation of plaintiff's accusers was irrelevant to the committee's task; instead, the pertinent question was whether the accusations were true and, if so, whether Davis should be dismissed.

Davis also charges that the members of the ad hoc committee had never taught him and were unqualified to judge his academic performance and that this constituted a deprivation of due process. This argument is unsound for a number of reasons. First,

---

**4.** In *Horowitz,* the faculty's dissatisfaction with the student's clinical performance in medical school was based in part on erratic attendance. Failure to keep adequate records, even if through apathy or negligence rather than a lack of knowledge, would seem to be an academic deficiency in the same way that chronic absenteeism would be. *See Horowitz,* 435 U.S. at 91 n. 6, 98 S.Ct. at 955 n. 6.

**5.** Plaintiff cites *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), in support of the contention that specific findings were required. *Goldberg,* however, involved termination of welfare payments, the property interest to which the Supreme Court has accorded the greatest procedural protections, including many which are not required for a student dismissal. *See* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* 573–74 (2d Ed.1983). In *Goldberg* the Court held that the decisionmaker should state the reasons for his determination to "demonstrate compliance with [the] elementary requirement" that his conclusion "rests solely on the legal rules and evidence adduced at the hearing." *Goldberg,* 397 U.S. at 271, 90 S.Ct. at 1022. This "elementary requirement" apparently has not been applied to student dismissals. Therefore the requirement that reasons be stated would seem also to be inapplicable to the instant situation.

if the school was judging plaintiff's academic qualifications for remaining in the program, no hearing was required, *see supra,* and thus a defect in the constitution of the committee could not be a denial of due process. On the other hand, if, as must have been the case in order for a hearing to be required, the charges against Davis were disciplinary, then the qualifications of the committee members to judge Davis academically would be irrelevant. In any event, the charge that the committee was not competent is without basis in fact or reason. Four of the five committee members were dentists and on the faculty of the dental school. The fifth member of the committee, although not a dentist, was a physician and a member of the University Medical Center faculty in the Department of Family Medicine. A family medicine rotation was part of the General Practice Residency Program. Thus, the members of the committee clearly were qualified to evaluate plaintiff's performance.

■ Plaintiff also asserts a denial of due process in that, because Mann was not present at the hearing, he was denied a hearing before the official with ultimate authority to make the decision to dismiss him. However, it is established by Mann's uncontroverted affidavit that he reviewed a tape of the hearing and the exhibits presented at that hearing before reaffirming his decision to dismiss Davis. In the court's opinion, this review satisfies the requirements of due process. *See Esteban v. Missouri State College,* 277 F.Supp. 649, 651 n. 1 (W.D.Mo.1967). Davis also charges that he was deprived of his entitlement to have the decision to dismiss made by an unbiased decisionmaker. However, where there is an adequate appeal process, bias on the part of the initial decisionmaker is not a denial of procedural due process. *See Schaper,* 813 F.2d at 715–16. In this case, Davis was given the opportunity to appeal Mann's decision to the chancellor of the university, and he did so. Davis makes

no allegation of bias on the part of the chancellor. Therefore, even assuming that Davis has alleged facts from which an inference that Mann was biased could be drawn, any such bias did not make the dismissal process unconstitutionally defective.

Davis further charges that his procedural rights were violated because his attorney was not allowed to examine or cross-examine every witness at the hearing. While it appears that, at least under certain circumstances, a student facing disciplinary expulsion is entitled to the presence and assistance of counsel at his hearing,[6] it is by no means well established that a student is entitled to have counsel examine and cross-examine witnesses and make legal arguments to the hearing body. *Compare Henson v. Honor Committee,* 719 F.2d 69, 73, 74 (4th Cir.1983), *and Wimmer v. Lehman,* 705 F.2d 1402, 1404–05 (4th Cir.1983), *with Black Coalition v. Portland School District No. 1,* 484 F.2d 1040, 1045 (9th Cir. 1973). This court is persuaded by the reasoning in *Henson* and *Wimmer* and accordingly concludes that the restrictions placed by the committee on the participation of plaintiff's counsel did not violate the due process clause. In any event, in order for a procedural defect to constitute a denial of due process, it must cause substantial prejudice to the party. *Keough v. Tate County Board of Education,* 748 F.2d 1077, 1083 (5th Cir.1984). It is the court's conclusion that the restrictions on counsel's participation did not substantially prejudice plaintiff's case before the hearing committee, especially since Davis admitted to most of the acts and omissions testified to by the witnesses against him and since most of the areas of inquiry which Davis contends his attorney would have pursued in cross-examining witnesses relate to the motivation for the bringing of the charges against Davis, which, as noted above, the committee properly refused to consider.[7]

6. *See Gabrilowitz v. Newman,* 582 F.2d 100, 106–07 (1st Cir.1978); *Black Coalition v. Portland School District No. 1,* 484 F.2d 1040, 1045 (9th Cir.1973).

7. Plaintiff's main complaint in regard to counsel's not being permitted to cross-examine witnesses concerns the testimony of Dr. Hodgson. Davis was apprised of the nature of Dr. Hodgson's testimony in advance of the hearing and

Davis also asserts that he was denied due process by the introduction of falsified evidence before the hearing committee. The basis of this charge is that the school presented to the hearing committee and provided to Davis a document which was purported to be the minutes of the first faculty committee meeting to consider Davis' performance in the residency program. In fact, this document was not the complete minutes of that meeting. Missing from the truncated version was the substance of comments made by the members of the committee concerning plaintiff's performance. Plaintiff contends that because some of these comments were favorable to him, the hearing committee was not presented with the full story. He also asserts that since he was not given the full text of the minutes, he did not know that the faculty members had made these favorable comments and that had he known, he could have had them testify at the hearing.

In regard to Davis' argument based on lack of notice to him, the court observes that he knew from the abbreviated version of the minutes who the members of the committee were; thus he could have talked to them to determine if they could give testimony favorable to him. In addition, Dr. Elgene Mainous, who made comments favorable to Davis at the meeting, did testify at the hearing. Moreover, while it is clear that a student must be given notice of the nature of the charges against him, the court is aware of no authority that in a student disciplinary process the school is required to give the student notice of evidence favorable to him.

In regard to Davis' argument relating to the evidence before the committee, the court notes that most of the comments contained in the portion of the minutes omitted from the document were negative and unfavorable to Davis.[8] In addition, the purpose of the committee, as noted above, was to make an independent review of

Davis' performance, not to sample the opinions of other faculty members. In any event, the court is of the opinion that the omission in question did not substantially prejudice Davis, since the comments plaintiff contends should have been made known to the hearing committee make up such an insubstantial part of the total hearing record.

Plaintiff also contends that due process was violated because Mann made the decision to dismiss him prior to affording him a hearing. This contention is without merit. There is nothing inconsistent with the due process clause in a school administrator's making a determination, prior to a hearing, that a student's conduct merits dismissal and, following a hearing, making a reconsideration and reaffirmation of the initial decision. The timeliness of a termination hearing is tied to the date of actual dismissal, not the date on which the initial decision to terminate is made.

▮▮▮ Plaintiff goes on to argue that because the hearing was not held until after the effective date of his dismissal, he was denied due process. Davis is correct that usually due process requires a pretermination rather than a post-termination hearing. *See Goss v. Lopez*, 419 U.S. 565, 582, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975). However, this general rule is not without exception. The Supreme Court has recognized that under certain circumstances school authorities may exclude a student before granting him a hearing. *See id.* It is the court's opinion that this is one of those exceptional cases. Plaintiff's participation in the program called for him to treat patients. The school suspected that he had rendered inappropriate and substandard treatment; on at least two occasions, his treatment purportedly could have resulted in serious harm to patients. Given the dental school's interest in providing proper treatment to and insuring the safety

had the opportunity to confer with counsel and be advised of how to conduct his questioning of Hodgson.

**8.** As noted above, Dr. Mainous, who commented favorably on Davis, testified at the hearing. There were unattributed statements in the min-

utes that the emergency room rotation "went well" and that Davis had presented a lecture to the residents in the Family Medicine Clinic. This information was given to the hearing committee by other means.

of its patients, the court concludes that the circumstances provided adequate justification, once the initial determination was made that Davis should be discharged, for dismissing him before a hearing was held.

■ Finally, plaintiff charges that he was not given sufficiently detailed notice of the charges and evidence against him prior to the hearing. In the opinion of the court, the prehearing notice of charges did not apprise Davis in sufficient detail of the complaints about his record keeping or of some of the asserted deficiencies in treatment. It does not automatically follow, however, that Davis was, under the circumstances, deprived of due process. The standard for notice is that it must be sufficiently detailed and sufficiently in advance of the hearing to give the party an opportunity to prepare a defense to the charges. When the school presented its case at the hearing on March 8, 1986, Davis was informed in detail of all the charges and evidence against him. Of course, this notice was not timely; Davis could not have been expected to prepare and present on that day a defense to those charges of which he had not received detailed notice.

Fortunately for defendants, however, the committee was not able to conclude the hearing on March 8, but reconvened the hearing on March 15. Davis was not called on to present his defense until this second session.[9] In the court's opinion, this one-week lapse of time between the presentation of the charges against Davis and his presentation of his defense gave him a sufficient opportunity after receiving detailed notice of the charges and evidence against him to prepare his defense to those charges. That is, defendant received constitutionally adequate notice sufficiently in advance of being called on to present his defense. Accordingly, the court concludes that the school's failures in regard to notice

did not constitute a denial of due process or, alternatively, did not work a substantial prejudice to Davis.

In sum, the court is of the opinion that the hearing accorded Davis was not constitutionally defective. Therefore, even if it were proper to analyze the case under the standard for a termination of employment or a student disciplinary dismissal so that a hearing would be required, defendant was not denied procedural due process in connection with his dismissal.

Davis further asserts that defendants violated his substantive rights under the due process clause in that the decision to dismiss him was arbitrary and capricious. Assuming, without deciding, that the federal courts can review the substantive aspects of student-dismissal decisions made by school officials, see Ewing, 474 U.S. at 222–23, 106 S.Ct. at 511–12, the court concludes that the undisputed facts of record reveal no arbitrary action.[10]

### FREE SPEECH

■ Plaintiff alleges that the real reason for his discharge was his having complained about perceived shortcomings in the General Practice Residency Program. The government cannot condition a benefit on a basis that infringes the recipient's right to engage in constitutionally protected speech. See Connick v. Myers, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). Whether speech is protected is a question of law, but the determination is based on resolution of factual issues, including the content, form and context in which the speech was made. Simon v. City of Clute, 825 F.2d 940, 943 (5th Cir. 1987). The court is of the opinion that the factual record concerning these aspects is insufficient to permit the court to hold as a matter of law that plaintiff's speech was

---

**9.** Some witnesses for Davis testified at the first session. However, their testimony did not relate to charges of which Davis did not receive sufficiently detailed notice.

**10.** Plaintiff also complains of the hearing committee's failure to distinguish between malfeasance and inefficiency. He asserts that he was charged with malfeasance but the committee

found that he had been guilty only of inefficiency. This contention is an invitation for this court to review the substance of the committees decision. If the court has the power to review the substance of school officials' decisions, such review is limited to examining for capriciousness.

not protected and that his dismissal did not violate his first amendment rights. Accordingly, defendants' motion for summary judgment on plaintiff's free speech claim must be denied.

## STATE LAW CLAIMS

■ Plaintiff has asserted claims under state law for breach of contract and violation of due process rights provided by state law. To the extent that these claims are lodged against Mann and the members of the Board of Trustees in their official capacities, the claims are against the state. *Sorey v. Kellett,* 673 F.Supp. 817, 822–23 (S.D.Miss.1987). Consequently, under the eleventh amendment this court lacks jurisdiction to adjudicate the claims. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 106, 121, 104 S.Ct. 900, 911, 919, 79 L.Ed.2d 67 (1984).[11]

■ Plaintiff contends that Mississippi has waived its eleventh amendment immunity by authorizing the University Medical Center to enter into employment contracts with citizens of other states, such as Davis. However, a waiver of eleventh amendment immunity must be clear and unequivocal; it is not to be inferred merely from a waiver of sovereign immunity or the establishment of procedures for contracting with the state and enforcing contractual rights against the state in its courts. *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974); *Brady v. Michelin Reifenwerke,* 613 F.Supp. 1076, 1081 (S.D.Miss.1985).

■ The fact that state law authorizes contracts with citizens of other states is no more a waiver of eleventh amendment immunity than is the authorization of contracts with the state's own citizens, since a state's own citizens can no more sue it in federal court than can a citizen of another state. Plaintiff's assertion that the federal courts are the "ordinary forum" for suits by citizens of another state is of no moment, since the federal courts would be the "ordinary forum" only in diversity cases. A state is not a citizen for diversity purposes. *Dacey v. Florida Bar, Inc.,* 414 F.2d 195, 198 (5th Cir.1969), *cert. denied,* 397 U.S. 909, 90 S.Ct. 906, 25 L.Ed.2d 89 (1970). It is one thing to say that the state legislature, in authorizing an agency to enter into a contract with a citizen of another state, consents to be sued on that contract in state court; it is quite another to suggest that the legislature in doing so gives its consent to be sued in federal court. In sum, the court finds no waiver of eleventh amendment immunity.[12] Therefore, this court has jurisdiction over plaintiff's state law claims only insofar as they are asserted against Mann individually.

As stated above, plaintiff's state law claims are for breach of contract and denial of due process rights conferred by state law. The breach of contract claim as asserted against Mann must fail because the state, through its agency the University Medical Center, was the other party to plaintiff's contract and the breach of that contract, if any, was therefore committed by the state, not by Mann.[13]

---

**11.** While the eleventh amendment has been held to bar suits against the state for damages, the courts have permitted a state to be sued for prospective injunctive relief through the fiction of a suit against the state officer in his official capacity. *See Ex Parte Young,* 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908). Such a suit, however, is limited to relief for violations of federal law. Not even prospective injunctive relief is available to a citizen against a state for a claim based on state law. *Pennhurst,* 465 U.S. at 106, 104 S.Ct. at 911; *Livingston Parish School Board v. Louisiana State Board of Education,* 830 F.2d 563, 569 n. 13 (5th Cir.1987). Thus, this court is without jurisdiction to grant the injunctive relief sought by Davis.

**12.** Moreover, apart from eleventh amendment considerations, Mann's claims against the state based on state law cannot be brought in federal court pursuant to 28 U.S.C. § 1332 because a state is not a "citizen" for purposes of diversity jurisdiction. *Dacey,* 414 F.2d at 198; *National Market Reports, Inc. v. Brown,* 443 F.Supp. 1301, 1305 (S.D.W.Va.1978). Of course, but for the bar of the eleventh amendment, the court could, under appropriate circumstances, exercise pendent jurisdiction to entertain such claims.

**13.** In connection with his motion to reconsider, plaintiff raises the issue of the possible liability of Mann for tortious interference with the contract between Davis and the state. A claim for interference with contract was not set forth in

Assuming, without deciding, that there exists under Mississippi law a private cause of action for damages against an individual government official for denial of state due process rights,[14] the court is of the opinion that plaintiff's claim against Mann on that basis is without merit.

Davis asserts that his dismissal violated the Mississippi Administrative Procedures Law (MAPL), Miss.Code Ann. §§ 25–43–1 through 25–43–19, in that the decision to dismiss him was not based on substantial evidence appearing in the record. However, plaintiff's reliance on the MAPL is misplaced. First, the MAPL does not reach cases of discipline of an agency's employees. *See* Miss.Code Ann. § 25–43–3(b) (Supp.1986). Plaintiff has cited no cases which apply the MAPL to a student disciplinary proceeding. Second, even if the MAPL is applicable in this case, the court is of the opinion that the decision to dismiss Davis was based on substantial evidence in the record and was not arbitrary or capricious. Thus the court must look elsewhere in considering plaintiff's state due process claim.

Davis does not cite any authority which suggests that state law imposes procedural requirements more stringent than those under federal law. In *Love v. Mississippi State Board of Veterinary Examiners*, 230 Miss. 222, 92 So.2d 463 (1957), the Mississippi Supreme Court held that the right to a hearing included "the right to present evidence" and "the reasonable opportunity to know the claims of the opposing party and to meet them." *Love*, 92

So.2d at 467. The court further held that a party should be permitted to review the evidence against him and to offer rebuttal evidence. *Id.; see also Eidt v. City of Natchez*, 421 So.2d 1225, 1230 (Miss.1982) (minimum procedures necessary to comply with due process are meaningful notice and hearing before neutral tribunal where one may present his side of controversy) (employment termination). The standard appears to be essentially similar to, and certainly no stricter than, that applicable under federal constitutional law. Therefore, for the reasons underlying the court's holding that plaintiff's rights under the due process clause of the fourteenth amendment were not violated by defendants, the court concludes that the procedures followed in connection with plaintiff's dismissal comported with the requirements of state law as well. Accordingly, the court concludes that Mann's motion for summary judgment on the state law due process claim against him should be granted.

For the reasons set forth herein, it is ordered that

(1) the motion of plaintiff for partial summary judgment is denied;

(2) the motion of defendants for summary judgment on plaintiff's free speech claim is denied;

(3) the motion of defendants for summary judgment on plaintiff's claims under the due process clause of the fourteenth amendment is granted;

(4) plaintiff's state law claims against Mann in his official capacity and against

---

plaintiff's complaint and therefore the issue is not properly before the court.

**14.** A private cause of action against state or local officials for violation of federal constitutional or statutory rights is granted by 42 U.S.C. § 1983. A similar remedy against federal officials has been created by decision. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971). This court is of the opinion that a cause of action for damages against a state official for violation of state due process rights must be authorized either by a statute analogous to section 1983 or by state case law. The court is aware of no such statutory or decisional authority expressly authorizing such an action. Davis relies on *Hart v. Walker*, 720 F.2d 1436 (5th

Cir.1983), in which the court of appeals affirmed a judgment against a county supervisor for interfering with the plaintiffs' state law right of access to their property. However, the damages remedy appeared to be based on the right to just compensation for land taken by eminent domain. As noted in *Williams v. Walley*, 295 So.2d 286, 288 (Miss.1974), upon which the court in *Hart* relied, the relevant provision of the Mississippi Constitution was self-executing. By contrast, the due process protections afforded by state law are not self-executing, and thus *Hart* might not be authority for imposing damages on a state official for depriving a person of due process. However, a resolution of the issue is not necessary to the court's decision in this case.

the members of the Board of Trustees of State Institutions of Higher Learning in their official capacities are dismissed;

(5) the motion of defendant Mann for summary judgment on the state law claims against him in his individual capacity is granted.

ORDERED.