Richard **PFLEPSEN**, Appellee,

v.

**UNIVERSITY OF OSTEOPATHIC MEDICINE, College of Podiatric Medicine, Appellant.**

No. 93–450.

Supreme Court of Iowa.

July 27, 1994.

Rehearing Denied Sept. 20, 1994.

Donald A. Wine and Diane M. Stahle of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for appellant.

John W. Holmes of Holmes & Holmes, Waterloo, and Roger J. Kuhle of Law Office of Roger J. Kuhle, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and TERNUS, JJ.

HARRIS, Justice.

This dispute stems from plaintiff's dismissal while a fourth-year podiatry student. He seeks readmission and compensatory damages. The district court found the dismissal was improper but declined to order reinstatement. Rather the court ordered, as damages, reimbursement of plaintiff's tuition and fees. We find the dismissal was authorized and thus affirm the refusal to reinstate the student. We reverse the damage award.

A key question in most challenges to a student's dismissal is whether it was for academic reasons. If it was, as will be seen, courts are loath to interfere. Courts will

intercede more readily, even in cases involving private colleges, where the dismissal results from a student's alleged misconduct. This issue becomes clouded in the present case for two reasons. First, bizarre or controversial behavior by a potential physician is apt to reflect both on the student's academic performance and the student's deportment. The second cause of confusion here is that the college leveled, in addition to a charge of academic failure, one abortive charge of misconduct, and a separate two-count charge of specific misconduct. The lines between academic performance and nonacademic misbehavior, which often tend to blur, do so especially strongly in this case because, although it is up to the courts to draw the lines, the colleges sometimes try without success to do so. This happened here, but in the end this clouded distinction does not control the appeal. Even though we are obliged to assume Pflepsen's dismissal was nonacademic, we conclude it was authorized as a disciplinary one.

In 1984 plaintiff Richard Pflepsen enrolled as a student in the College of Podiatry at defendant University of Osteopathic Medicine (the college), a private institution located in Des Moines. Although he attempts to dispute the point, it is clear that Pflepsen's performance as a student was dismal. He failed several courses although, on retaking them, he failed none of them twice. In his third year, after failing his spring clinical rotations, Pflepsen appealed and was allowed to retake them. Pflepsen received a failing grade in neurobiology in the spring of 1986, which resulted in his being placed on academic probation.

In 1987 Pflepsen received an internship at a hospital in Minneapolis. Problems arose concerning his work there causing the college to recall him to the Des Moines campus. When Pflepsen refused to return, the college's student promotion and evaluation committee (SPEC) recommended he be placed on probation and he was.

Pflepsen was then assigned to do his clinical rotations in Des Moines. Pflepsen had serious attendance problems and, at a meeting between the dean of the university and the director of the clinical program, Pflepsen was confronted with them. He was told his problems must be corrected or further action would be necessary. The following month the college informed Pflepsen he had failed his fourth year clinical rotations.

Soon thereafter SPEC became aware of two alleged incidents of unauthorized practice by Pflepsen. SPEC also investigated allegedly forged medical excuse slips used by Pflepsen. As will be seen, the forgery charges were later dropped. After a series of notices and hearings these allegations of improper conduct led to Pflepsen's dismissal.

Pflepsen then filed this action in equity to challenge the dismissal. The district court determined that Pflepsen's discharge was for nonacademic reasons and was arbitrary and capricious. The court nevertheless refused to order his reinstatement but awarded $58,400 in damages, roughly equivalent to four years tuition.

The college appealed. Pflepsen cross-appealed, seeking reinstatement and damages for pain and suffering. The case below was tried in equity and review is therefore de novo. Iowa R.App.P. 4.

█ I. The deference courts accord to academic dismissals is well grounded. The United States Supreme Court has noted that "whether to dismiss a student for academic reasons requires expert evaluation of cumulative information not readily adapted to the procedural tools of judicial or administrative decisionmaking." *Board of Curators v. Horowitz*, 435 U.S. 78, 90, 98 S.Ct. 948, 955, 55 L.Ed.2d 124, 135 (1978). Our court of appeals has noted the same: "Courts are reluctant to intervene in cases involving dismissals for academic deficiency since such decisions are within the expertise of the school; but dismissals for disciplinary reasons are more closely scrutinized by the courts." *Harvey v. Palmer College of Chiropractic*, 363 N.W.2d 443, 444 (Iowa App. 1984). We do not suggest that the great deference accorded academic dismissals means that courts never interfere with them, or that they closely superintend nonacademic dismissals.

As mentioned, the college leveled two charges against Pflepsen. The first, that he

had forged absence excuses was clearly nonacademic. It was not proven, has been dropped, and we give it no further consideration. The second charge, Pflepsen's performance while on probation, was also thought by the college to be nonacademic. The college took this view in its student handbook, in its letter of dismissal of Pflepsen, and in response to Pflepsen's request for admissions in this suit.

The handbook and letter of dismissal would probably not constitute insurmountable obstacles to the college's insistence that the dismissal was academic, but the judicial admission does.

The college points out that, in view of the high stakes, the question of whether a dismissal is academic or nonacademic cannot be left to the college to establish by a label. Otherwise, the argument goes, institutions could label all dismissals as academic and thereby escape court intervention in nearly all cases. There is some force to the argument, but it will not rescue the college here. Under Iowa rule of civil procedure 127 it answered requests for admissions, expressly stating (probably because of the handbook and its letter of dismissal) that Pflepsen's dismissal was nonacademic.

We observe in passing that this admission was improvident. Pflepsen's dismissal clearly qualifies as academic. Practical aspects of professional training and discipline, especially in the health sciences, are a part of the student's academic training. *Davis v. Mann,* 721 F.Supp. 796, 799–800 (S.D.Miss.1988), *aff'd,* 882 F.2d 967 (5th Cir.1989) (dental clinical program academic); *Lipsett v. University of Puerto Rico,* 637 F.Supp. 789, 808 (D.P.R.1986) (surgery resident's dismissal for insubordination was academic rather than disciplinary).

These authorities are to no avail to the college in this case because of its judicial admission that the dismissal was nonacademic. As the trial court found, Iowa rule of civil procedure 128 provides that the admission conclusively establishes the matter in this litigation.

■ II. The college is left then with a stricter burden in defending Pflepsen's dismissal on a disciplinary basis. We think it carried it. Two grounds are alleged. The first incident involved Pflepsen's performing a procedure after being expressly told to wait until an instructor was present. Pflepsen and other students were in the room preparing for clinicals. The supervising doctor left the room and told the students not to start without him. Pflepsen went ahead and performed the procedure involving scrubbing and incising a patient's toe. The patient was not harmed.

The second act involved Pflepsen's removal of a postoperative bandage from a patient's foot. Contrary to instructions this was done without the supervising instructor present. Pflepsen thus violated direct instructions, especially when he performed the surgical procedure in the first incident.

The district court thought these two incidents were insignificant and that they failed to warrant dismissal. We disagree. The incidents must be viewed in context. Pflepsen had been repeatedly warned and knew he was on probation. The record is clear that Pflepsen had established himself as a troublemaker with the faculty and that this contributed to his probation. He nevertheless thereafter persisted in doing things with patients he was expressly and specifically told not to do.

Even though the incidents would, under the authorities previously mentioned, qualify as academic matters, they also qualify as disciplinary violations. Under all the circumstances they justify dismissal. The trial court finding the dismissal unauthorized is reversed. Pflepsen is not entitled to readmission as a student.

III. What we have said disposes of Pflepsen's claim of entitlement to damages. He is entitled to none.

The order of the trial court is reversed and the case is remanded for entry of a judgment in conformance with this opinion.

**REVERSED ON THE APPEAL; AFFIRMED ON THE CROSS–APPEAL.**